**MBP CORP., Appellant**

v.

**BOARD OF TRUSTEES OF the GAL-VESTON WHARVES and The Galveston Port Facilities Corporation, Appellees.**

No. 14–07–01064–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 17, 2009.

Ben A. Baring, Jr., Paul J. McConnell, III, Houston, TX, Craig Trively Enoch, Linda Jene Burgess, Austin, TX, Keith W. McFatridge, Jr., Galveston, TX, for Appellant.

Anthony P. Brown, Michael B. Hughes, Galveston, TX, for Appellees.

Panel consists of Justices GUZMAN and SULLIVAN, and Senior Justice HUDSON.*

---

* Senior Justice J. Harvey Hudson participating by assignment.

## OPINION

KENT C. SULLIVAN, Justice.

Appellant, MBP Corp., sued two governmental entities for breach of a lease agreement and inverse condemnation. The trial court dismissed the suit, ruling that the defendants were immune from suit. Appellant challenges the dismissal, raising two issues. First, MBP contends governmental immunity does not bar its constitutional-takings claim against the appellees, the Board of Trustees of the Galveston Wharves and the Galveston Port Facilities Corporation (collectively, the "Wharves"). Second, appellant contends the Wharves waived immunity through egregious conduct. We affirm the dismissal.

## I.

### BACKGROUND

In 1990, the Wharves agreed to lease the rooftop and aerial rights of the Mallory Building, more commonly known as the Galveston Cruise Ship Terminal (the "Terminal"), to MBP's predecessor-in-interest, Woodlands Corp. In 1994, Woodlands transferred its leasehold rights to MBP.

Over the next ten years, MBP and the Wharves agreed to several amendments of the original lease agreement. In 1999, the parties executed an amendment that permitted the Wharves to construct several improvements on the Terminal rooftop, including an enclosed pedestrian walkway. Through another amendment signed in 2003, the Wharves expanded several rooftop improvements and modified the pedestrian walkway.

This case arises from the Wharves' decision, allegedly in breach of the lease agreement, to further expand the pedestrian walkway in 2007. As a result of Hurricane Katrina, which caused damage to ports throughout the Gulf Coast, several significant cruise lines altered their routes to make use of the port of Galveston. To accommodate a corresponding increase in passenger traffic, the Wharves opted to build additional air conditioning units in the Terminal and expand the rooftop's pedestrian walkway into a larger disembarkation ramp. They approached MBP with a proposal to amend the lease to expressly provide for the additional construction, but the parties could not reach agreement on the terms of the amendment.[1] Nevertheless, the Wharves built the desired improvements anyway, contending that Section 1.02 of the lease agreement, as amended in 1999, already gave them permission to "construct and maintain air conditioning equipment . . . and an enclosed pedestrian walkway."

MBP disagreed with the Wharves' contract interpretation and sued them for breach of contract, requesting the following relief: (1) an injunction requiring the Wharves to remove the latest installations and restore the rooftop to its previous condition; (2) an injunction preventing the Wharves from further altering the rooftop; and (3) attorneys' fees.[2] The Wharves asserted immunity and moved to dismiss the suit for lack of subject-matter jurisdiction. In response, MBP filed a supplemental petition alleging a constitutional-takings claim:

1. To secure its approval of the proposed construction, MBP demanded, among other things, a forty-two year extension of the lease, free use of some of the port facilities, the reallocation of some port revenues from the Wharves to MBP, and annual rent payments to MBP that were to start at $60,000 and then increase by 4% every year. The Wharves apparently rejected these demands.

2. Initially, MBP also brought a trespass claim and a request for exemplary damages. Both claims were later dropped.

Article 1[ ] § 17 of the Texas Constitution prohibits the taking or damaging of a person's property by a governmental entity for public use without adequate compensation to the owner of the property. Plaintiff is the owner of a leasehold interest in the rooftop of the Mallory Building and the aerial space above it. Defendants have taken or damaged such property without initiating a condemnation proceeding and without adequate compensation to Plaintiff. Plaintiff is entitled to injunctive relief to prohibit such activity and to restore the rooftop to its state prior to the unauthorized actions of Defendants.

Notably, MBP did not seek "adequate compensation" for the alleged taking, but instead continued to pursue only injunctive relief and attorneys' fees.

The trial court ruled that the Wharves were immune from suit, and dismissed MBP's claims for lack of subject-matter jurisdiction. MBP has appealed the dismissal, raising two issues. First, MBP contends its pleadings raise a constitutional-takings claim against which the Wharves have no immunity. Second, MBP argues the Wharves' behavior is sufficiently egregious to justify the application of the "waiver by conduct" exception theorized in *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 408 n. 1 (Tex.1997).

## II.

### ANALYSIS

■ Under the doctrine of governmental immunity,[3] political subdivisions of the State are protected from lawsuits for damages, absent a waiver of immunity or legislative consent to sue. *See Lake Charles Harbor & Terminal Dist. v. Bd. of Trs. of the Galveston Wharves*, 62 S.W.3d 237, 245–46 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Here, the parties agree that both defendants, the Board of Trustees of the Galveston Wharves and the Galveston Port Facilities Corporation, qualify as governmental entities.[4]

■ A governmental entity's immunity encompasses both immunity from liability and immunity from suit. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Although the act of voluntarily entering into a contract may waive a governmental entity's immunity from liability, it does not necessarily waive the entity's immunity from suit. *See id.* Thus, unless the Legislature explicitly waives immunity, governmental entities generally enjoy immunity from suit. *See id.*

### A.  Standard of Review

■ If a political subdivision of the State is entitled to immunity from the

---

3. In this opinion, we will use the term "governmental immunity," which extends to political subdivisions of the State including cities, as opposed to "sovereign immunity," which refers to the State's immunity from suit and liability. *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 214 n. 5 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

4. The City of Galveston has authorized the Board of Trustees of the Galveston Wharves to exercise management and control of the city's wharf and terminal facilities. *See Lake Charles*, 62 S.W.3d at 246 ("The Wharves is thus a governmental unit, and as such is

protected by the doctrine of sovereign immunity."). Similarly, the Galveston Port Facilities Corporation is a "local government corporation" charged with assisting the Board of Trustees with its governmental functions. *See* Tex. Transp. Code Ann. § 431.101(a) (Vernon 2007). As such, the corporation is a governmental unit and is entitled to immunity from suit, unless its immunity is waived. *See id.* § 431.108; *Ray Ferguson Interests, Inc. v. Harris County Sports & Convention Corp.*, 169 S.W.3d 18, 22 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

plaintiff's claims, the trial court lacks subject-matter jurisdiction to consider the suit. *See Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 740 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd). We review a trial court's subject-matter jurisdiction, which is a question of law, using the *de novo* standard of review. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). A defendant may challenge the court's subject-matter jurisdiction by filing a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In its plea, the defendant may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–27.

The plaintiff bears the burden of alleging facts that affirmatively demonstrate the trial court's subject-matter jurisdiction over a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). When a plea is directed at the plaintiff's pleadings, we are to determine whether the plaintiff has alleged facts demonstrating the trial court's jurisdiction to entertain the case. *Miranda*, 133 S.W.3d at 226. In that event, we construe the pleadings liberally in the plaintiff's favor and do not decide the merits of the case. *Id.; Bland*, 34 S.W.3d at 554. If the pleadings neither establish jurisdiction nor demonstrate incurable defects in jurisdiction, we must permit the plaintiff an opportunity to amend its pleadings. *See Miranda*, 133 S.W.3d at 226–27. By contrast, if the pleadings affirmatively negate jurisdiction, the trial court may grant a plea to the jurisdiction without allowing the plaintiff to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

When, as here, the defendant's plea challenges the existence of jurisdictional facts,[5] we consider the relevant evidence submitted by the parties to the extent necessary to resolve the jurisdictional questions raised. *See Miranda*, 133 S.W.3d at 227. In this scenario, we will assume as true all evidence that favors the nonmovant. *See id.* at 228. A trial court properly grants a plea to the jurisdiction when the relevant evidence is undisputed or fails to raise a fact question as to jurisdiction. *See id.* However, if the evidence reveals a fact question on the jurisdictional issue, we will remand the dispute to be resolved by the fact-finder. *See id.* at 227–28.

## B. Alleged Takings Claim

In its first issue, MBP contends the Wharves' governmental immunity does not extend to MBP's constitutional-takings claim. The Wharves respond that their immunity remains intact because they lacked the requisite intent to take property using sovereign powers, and instead expanded the disembarkation ramp solely under a "color of right" pursuant to the lease agreement. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598–99 (Tex.2001). We agree with the Wharves.

The Texas Constitution provides a limited waiver of the government's immunity when property is taken, damaged, or destroyed for public use without adequate compensation. *See* Tex. Const. art. I, § 17; *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980); *Green Int'l, Inc. v. State*, 877 S.W.2d 428, 433 (Tex. App.-Austin 1994, writ dism'd). In other words, immunity does not protect a gov-

---

5. Initially, the Wharves' plea focused solely on the sufficiency of MBP's pleadings. However, after MBP added a takings claim, the Wharves amended the plea to challenge the existence of jurisdictional facts under the evidence submitted to the trial court.

ernmental entity from a plaintiff's constitutional-takings claim. *See State v. Holland,* 221 S.W.3d 639, 643 (Tex.2007). Whether the government's actions in a particular case are sufficient to constitute a "taking" is a question of law. *Little–Tex,* 39 S.W.3d at 598. To prove a constitutional-takings claim, a plaintiff must demonstrate that (1) the government intentionally performed certain acts (2) that resulted in a "taking" of property (3) for public use. *See id.* When a contract is involved, as here, the plaintiff must also show that the government intended to act using its sovereign powers,[6] as opposed to an intent to withhold performance, money, or property in a contract dispute. *See id.* at 598–99. As the Texas Supreme Court explained in *Little–Tex:*

> [T]he State does not have the requisite intent under constitutional-takings jurisprudence when it withholds property or money from an entity in a contract dispute. Rather the State is acting within a color of right under the contract and not under its eminent domain powers. . . .
>
> Texas courts have long recognized that the State wears two hats: the State as a party to the contract and the State as sovereign. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers. In this situation, the State does not have the intent to take under its eminent domain powers; the State only has an intent to act within the scope of the contract.

*Id.* (citations omitted); *see Holland,* 221 S.W.3d at 643 ("When the government acts

pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit.").

Here, the parties disagree about the application of these principles to the Wharves' conduct. The Wharves contend their intent was merely to act pursuant to the lease agreement because their duty to perform arose *solely* from contract. *See Tex. Parks & Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 150 (Tex.App.-Austin 1998, no pet.). In response, MBP claims that the Wharves' actions were *outside* the contract and therefore could not have been motivated by an intent to act *under* the contract.

■■■■■■ In resolving this dispute, we note that the phrase "color of right under the contract" has not received a comprehensive definition in this immunity context. However, case law may provide guidance as to some of the boundaries of this doctrine. For example, the mere existence of a contract between the government and a private party does not necessarily confer immunity on the entity for all interactions between those parties: "The existence of a contract is not talismanic, but merely leaves the state's immunity from suit intact; it does not build an impenetrable wall nullifying the possibility of other waivers of and exceptions to that immunity." *Id.; see also Little–Tex,* 39 S.W.3d at 601 (Abbott, J., concurring) ("[M]ore than the mere existence of a contract is required to overcome a taking claim[.]"). Similarly, the government's statement of its subjective intent to act under a contract, by itself, may be insufficient to support a

---

**6.** Although this case involves an allegation that the Wharves exercised *eminent-domain* powers, a constitutional-takings claim may also encompass the government's use of *police power. See City of Dallas v. VSC, LLC,* 242 S.W.3d 584, 593 (Tex.App.-Dallas 2008,

pet. filed) ("The proper interpretation of . . . *Little–Tex Insulation Co.* is the government must intend to act under its sovereign powers, which include both eminent domain and police power.").

claim of immunity. *See Koch v. Tex. Gen. Land Office,* 273 S.W.3d 451, 458–59 (Tex. App.-Austin 2008, pet. filed) (rejecting State's attempt to extend *Little–Tex* to land-ownership disputes simply because "it 'believes' it is acting as landowner rather than as sovereign").

On the opposite end of the spectrum, the government may lack the requisite intent to take under its sovereign powers even if no contract exists or the government's interpretation of the contract is wrong. *See Holland,* 221 S.W.3d at 643 ("[A]bsence of an express contract between Holland and the State, or uncertainties about the existence of an implied contract between them, are immaterial to determining the capacity in which the State is acting."); *Green Int'l,* 877 S.W.2d at 434–35 ("[T]he State, while perhaps wrong about its interpretation of contractual obligations, has acted within its color of right under the contract."); *Brownsville Pub. Utils. Bd. v. Coatings, Inc.,* No. 13–07–00530–CV, 2009 WL 937178, at *4 (Tex. App.-Corpus Christi Mar. 19, 2009, no pet.) (mem. op.) (upholding immunity despite plaintiff's claim that government's action was "outside the contract"). Some cases have superimposed a good-faith inquiry onto the government's belief that its actions were justified by the contract. *See TRST Corpus, Inc. v. Fin. Ctr., Inc.,* 9 S.W.3d 316, 323 n. 4 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Green Int'l,* 877 S.W.2d at 434; *N.C. Sturgeon, L.P. v. Sul Ross State Univ.,* No. 03–01–00716–CV, 2003 WL 124208, at *2 (Tex.App.-Austin Jan. 16, 2003, pet. denied) (mem. op.); *see also Little–Tex,* 39 S.W.3d at 601 (Abbott, J., concurring) ("[C]ourts must determine whether the State is acting in good faith pursuant to its bargained-for contractual rights.").

This court, in an alleged "color of right" case decided last year, examined whether the government acted *akin to a private party* or, conversely, whether its actions *necessitated* the use of sovereign powers:

The easement language gave Harris County the right to take actions that "do not unreasonably impair [SWBT's] use of the easement." Under the auspices of this language, Harris County required SWBT to relocate a manhole vault, conduits, cables, and telecommunications facilities within the easement, relocate some facilities entirely outside the easement, and lower remaining lines that are located in the new right-of-way several feet, thereby causing SWBT to incur at least $200,000 in damages. Although Harris County asserts that their actions do not constitute a taking, *a private landowner would not be able to* force SWBT to relocate its equipment, give up a portion of its easement to public right-of-way, and incur up to $200,000 in damages based on the "unreasonably impair" language in the easement. *Only a government entity with condemning powers* could force a private utility company to relocate equipment and relinquish part of its easement to public right-of-way, and under Texas case law, these actions constitute a taking.

*Sw. Bell Tel., L.P. v. Harris County,* 267 S.W.3d 490, 496–97 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (emphases added) (citing *Houston Lighting & Power Co. v. State,* 925 S.W.2d 312, 315 (Tex.App.-Houston [14th Dist.] 1996, writ denied)). This analysis is consistent with the holdings in *Holland* and *Little–Tex,* which inquire whether the government acted "akin to a private citizen." *See Holland,* 221 S.W.3d at 643 (quoting *Little–Tex,* 39 S.W.3d at 599). The Dallas Court of Appeals recently employed a similar analysis: "[T]he District was acting *as any private party could,* and not a sovereign, in exercising its rights under the lease, and its

assertion of that right was not a taking." *Dallas County Cmty. Coll. Dist. v. Clear Channel Outdoor, Inc.*, No. 05–07–00701–CV, 2008 WL 3307085, at *3 (Tex.App.-Dallas July 31, 2008, pet. filed) (mem. op.).

Applying these principles here, we hold that MBP has failed to establish the Wharves' requisite intent to take property using its sovereign powers. We note that this case presents an unusual factual backdrop, at least in the context of immunity cases, because the governmental entity already *owns* the property it is alleged to have taken. There is no question that, in the absence of the lease agreement with MBP, the Wharves could have built a disembarkation ramp on their own property without needing sovereign powers.[7] *Cf. Sw. Bell Tel.*, 267 S.W.3d at 496–97 (rejecting claim of immunity because eminent-powers were *necessary* to accomplish government's land-use goals).

In fact, MBP's ability to limit the Wharves' property improvements, and the Wharves' duties to consider MBP's objections to any construction, are strictly limited to whatever rights may be conferred by the parties' voluntary contract. *See Callaway*, 971 S.W.2d at 150 (surveying cases in which government's duty to perform arises solely from contract); *Green Int'l*, 877 S.W.2d at 435 ("[T]here can be only limited application of the takings theory when rights have been voluntarily created by contract."); *City of Corpus Christi v. Acme Mech. Contractors, Inc.*, 736 S.W.2d 894, 903 (Tex.App.-Corpus Christi 1987, writ denied) (same). Thus, at its essence, this lawsuit is a dispute in which MBP contends its *contractual* rights to the Terminal rooftop were negatively affected by the Wharves' physical improvements. Ac-

cordingly, because a private landowner could have acted as the Wharves did, we conclude MBP has not shown the Wharves' requisite intent to act under its sovereign powers. *See Little–Tex*, 39 S.W.3d at 599; *Sw. Bell Tel.*, 267 S.W.3d at 496–97.

Our determination that this is a contract dispute, and not a valid takings claim, is also supported by the relief MBP seeks: (1) an injunction requiring the dismantling of the recent improvements, (2) an injunction preventing further alterations to the rooftop, and (3) attorneys' fees under the lease agreement. These remedies may be available in a breach-of-contract suit but cannot be recovered in a constitutional-takings claim. *See Scott v. Huntsville Indep. Sch. Dist.*, 487 S.W.2d 692, 693 (Tex. 1972) (holding trial courts may not enjoin government from exercising its article–1–section–17 condemnation rights); *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249 (Tex.App.-San Antonio 2006, pet. denied) ("Article I, Section 17 of the Texas Constitution ... does not authorize attorney's fees in a takings case."). Instead, the appropriate recovery under a constitutional-takings claim is "adequate compensation." Tex. Const. art. I, § 17; *see Motiva Enters., LLC v. McCrabb*, 248 S.W.3d 211, 215–16 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (discussing compensation in takings claims). However, MBP does not seek "adequate compensation," but instead advances an inverse-condemnation case in an apparent effort to recover traditional contract remedies. Generally, parties may not recover contract damages that are "advanced under the rubric of a constitutional takings claim." *State v. Operating Contractors*, 985 S.W.2d 646, 651 (Tex.App.-

---

7. In fact, in one of their filings in the trial court, the Wharves contended they could not have intended to use sovereign powers because "they have no legal authority to con-

demn property." However, that argument is not well-developed in the record and has not been advanced on appeal; therefore, we do not consider it. *See* Tex.R.App. P. 38.1(i).

Austin 1999, pet. denied) (citing *Green Int'l*, 877 S.W.2d at 433).

In addition, although we do not decide the merits of MBP's breach-of-contract claims here,[8] the Wharves have presented a colorable argument that the lease agreement, as amended in 1999, actually permitted the 2007 enlargement of the pedestrian walkway. In 1999, the parties specifically amended Article I of the lease agreement to include broad language in Section 1.02 authorizing the Wharves "to use a portion of the roof of the Mallory Building upon which to locate, *construct* and *maintain* air conditioning equipment, elevator equipment, and an enclosed pedestrian walkway."[9] MBP does not disagree with the Wharves' contention that the disembarkation ramp is a "pedestrian walkway." Thus, under the Wharves' interpretation of the contract, its decision to enlarge the pedestrian walkway complied with Section 1.02.

MBP advances a different interpretation, arguing that, because the Wharves' construction easement expired in 2000, the 1999 amendment cannot reasonably be read as authorizing further construction in 2007.[10] However, the Wharves respond that (1) Section 1.02, which confers their construction and maintenance rights, neither mentions the construction easement nor suggests that the Wharves' rights are limited in time; (2) the construction easement does not expressly limit the duration of the rights granted in Section 1.02; and (3) the contract is silent as to the interaction between Section 1.02, which seems to grant perpetual access rights to the Wharves, and the construction easement, which may limit the Wharves' access to the rooftop.

We need not decide which party's interpretation is correct to assess the trial court's subject-matter jurisdiction over the suit. *See Miranda*, 133 S.W.3d at 226; *Bland*, 34 S.W.3d at 554. Even if the Wharves' contract interpretation is incorrect, as MBP suggests, that would not change the capacity in which the government is acting. *See Holland*, 221 S.W.3d at 643; *Green Int'l*, 877 S.W.2d at 434–35. That is, we do not read *Little–Tex* as holding that the government must be deemed to have taken property by way of its sovereign authority whenever its interpretation of the contract turns out to be wrong. Otherwise, immunity would turn upon a court's determination of the merits of the plaintiff's breach-of-contract claims. *See Miranda*, 133 S.W.3d at 226; *Bland*, 34 S.W.3d at 554. That approach would shift the burden from the plaintiff, who must affirmatively demonstrate the trial court's subject-matter jurisdiction, *see Tex. Ass'n of Bus.*, 852 S.W.2d at 446, to the government, which then could defeat juris-

---

**8.** *See Miranda*, 133 S.W.3d at 226; *Bland*, 34 S.W.3d at 554.

**9.** Emphases added.

**10.** MBP also contends a remand is necessary to resolve a fact issue as to whether the Wharves exceeded the scope of the rights conferred by Section 1.02, citing this court's opinion in *Ahmed v. Metropolitan Transit Authority*, 257 S.W.3d 29 (Tex.App.-Houston [14th Dist.] 2008, no pet.). However, *Ahmed* is distinguishable because, unlike here, the governmental entity in *Ahmed*—Metro—admitted its construction was only *partially* ex-

plainable by contractual easement rights. *See id.* at 32–33. Thus, a fact issue existed as to whether the portion of Metro's drainage work that was not supported by easement rights constituted a taking of Ahmed's property. *See id.* at 33; *see also Callaway*, 971 S.W.2d at 149–51 (rejecting immunity claim by governmental entity because plaintiff's inverse-condemnation claim did not "rest on contractual grounds alone"). Here, by contrast, the Wharves' duties to MBP arise exclusively from contract, and MBP has not alleged a taking of any property not covered by the lease agreement.

diction only by proving it did not breach the contract in dispute.

Here, MBP has not shown the Wharves' requisite intent to take property using sovereign powers. Therefore, the Wharves are not subject to liability under article I, section 17 of the Texas Constitution. *See Holland,* 221 S.W.3d at 644.

Accordingly, we overrule appellant's first issue.

## C. Egregious–Conduct Exception

In its second issue, MBP contends the Wharves have waived their entitlement to governmental immunity through egregious conduct including the Wharves' (1) receiving benefits from the lease agreement, (2) affirming "they would honor the leasehold" by seeking MBP's permission to construct improvements, and then (3) breaching the contract. Appellant's argument presumes the existence of a waiver-by-conduct exception, a question that is far from settled.

Both this court and the First Court of Appeals have discussed, at length, the history of the waiver-by-conduct exception. *See Seureau v. ExxonMobil Corp.,* 274 S.W.3d 206, 220–21 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Tex. S. Univ. v. State St. Bank & Trust Co.,* 212 S.W.3d 893, 905–07 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Briefly, it began as a footnote to the Texas Supreme Court's majority opinion in *Federal Sign v. Texas Southern University,* 951 S.W.2d 401, 408 n. 1 (Tex.1997).

Over the next few years, several appellate courts interpreted the footnote in *Federal Sign* as creating a new judicially-created "waiver by conduct" exception to immunity. *Seureau,* 274 S.W.3d at 220. However, as of 2002, the Court was divided as to its continued existence. *See Tex. Natural Res. Conservation Comm'n v. IT–*

*Davy,* 74 S.W.3d 849, 857 (Tex.2002) (declining to fashion waiver-by-conduct exception) (plurality); *but see id.* at 860–61 (Hecht, J., concurring) (refusing to foreclose possibility of finding waiver by conduct under different circumstances). Since then, the First Court of Appeals has found waiver by conduct under "extraordinary factual circumstances" in which the government lured the plaintiff into the contract under " 'false promises that the contract would be valid and enforceable, then disclaimed any obligation on the contract by taking the position that the contract was not valid after all.' " *State St.,* 212 S.W.3d at 908.

Even assuming such an exception exists, the facts presented here do not warrant its extension to this ordinary contract dispute. *See Seureau,* 274 S.W.3d at 225; *Slade v. Tex. S. Univ. Bd. of Regents,* 232 S.W.3d 395, 400 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *IT–Davy,* 74 S.W.3d at 861 (Hecht, J., concurring). Unlike the plaintiff in *State Street,* MBP was not "lured" into the lease agreement by false promises the Wharves never intended to fulfill. *See Tara Partners, Ltd. v. City of S. Houston,* 282 S.W.3d 564, 580 (Tex.App.-Houston [14th Dist.] 2009, pet. filed). Nor does the record reflect that the Wharves have "chiseled" MBP or profited unfairly at its expense. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003); *IT–Davy,* 74 S.W.3d at 861 (Hecht, J., concurring).

To the contrary, the record implies that, from 1990 until 2007, MBP and its predecessor enjoyed an amicable, mutually beneficial relationship with the Wharves. During that time, the Wharves received the benefit of lease payments from MBP, and MBP enjoyed the privilege of using and occupying the leased premises. Unfortunately, after the parties were unable to agree to the terms of an amended lease,

that relationship deteriorated and MBP sued the Wharves for breach of contract. Even if those contract claims have merit, Texas law is clear that a governmental entity does not necessarily waive immunity from suit merely by accepting benefits under, and then breaching, a contract. *See Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex.2007); *Little–Tex,* 39 S.W.3d at 598–99; *Seureau,* 274 S.W.3d at 224 ("[F]inding waiver by conduct merely because the plaintiff alleges that the governmental entity breached the contract would render immunity useless by permitting the exception to swallow the rule.").

Therefore, because this case does not present the sort of "extraordinary factual circumstances" present in *State Street,* we decline to find a waiver of the Wharves' governmental immunity here. We overrule appellant's second issue.

## CONCLUSION

Finding no merit in the issues presented, we affirm the judgment of the trial court.