Opinion issued June 24, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01001-CV

———————————

GULF COAST WASTE DISPOSAL AUTHORITY, Appellant

V.

FOUR SEASONS
EQUIPMENT, INC.,
Appellee



 



 

On Appeal from County Civil Court at Law No. 1

Harris County, Texas



Trial Court Case No. 940424

 



 

O P I N I O N

          In
this interlocutory appeal, Gulf Coast Waste Disposal Authority (“Gulf Coast”),
a political subdivision of the State, appeals the trial court’s denial of its plea
to the jurisdiction, asserting that it has immunity from suit.  The underlying dispute arises from a
commercial transaction in which Gulf Coast acquired a crane from Four Seasons
Equipment, Inc. (“Four Seasons”) through an Internet auction.  We determine whether, as alleged by Four
Seasons, Gulf Coast’s governmental immunity was waived because the acquisition
of the crane constituted an uncompensated “taking” of Four Seasons’s property as
prohibited by article I, section 17 of the Texas Constitution.  

We conclude that the acquisition of
the crane was not an unconstitutional taking; thus, Gulf Coast’s sovereign
immunity has not been waived.  The trial
court erred when it denied Gulf Coast’s jurisdictional plea.  We further conclude that the trial court lacks
subject matter jurisdiction over Four Seasons’s breach of contract claim
because Four Seasons’s requested damages exceed the maximum jurisdictional
limit of the trial court.

          We
reverse and render judgment dismissing Four Seasons’s claims against Gulf Coast
for lack of jurisdiction.

Background

          Created by the Texas
Legislature, Gulf Coast is a political subdivision of the State of Texas.  It is a conservation and reclamation district,
which manages the water resources of Chambers, Galveston, and Harris counties
by providing waste disposal systems and regulation of waste disposal.  

In 2007, Gulf Coast sought to
purchase a crane for its Washburn Tunnel Treatment Facility.  Gulf Coast contacted Four Seasons and
requested budgetary pricing on a 30-ton capacity hydraulic rough terrain crane.  Gulf Coast requested and received Four Seasons’s
assistance in formulating the bid specifications for the desired crane.  

Gulf Coast informed Four Seasons that
the purchase of the crane would occur through the “reverse auction process.”  A reverse auction is a real-time bidding
process usually lasting less than one hour and taking place at a previously
scheduled time and Internet location.  Suppliers
anonymously submit bids to provide the designated goods or services.  During the auction, the bids go down rather
than up.  Bidders are able to view the
current bid and may make multiple, increasingly lower bids until the set time
expires.  The goal is to be the lowest
bidder at the end of the auction.  

Texas Procurement Center (“Texas
Procurement”), an auction facilitator, had the required software to conduct an
on-line reverse auction.  Gulf Coast did
not have the software to conduct a reverse auction and had previously used the
services of Texas Procurement when purchasing equipment through the reverse
auction process.  

To purchase the crane in 2007, Gulf
Coast again used Texas Procurement’s services to conduct the reverse auction.  Texas Procurement conducted the reverse
auction on July 30, 2007.  Four Seasons
participated in the on-line bidding process for the crane.  

Before it was permitted to
participate in the on-line bidding, Four Seasons was required to agree to the
terms and conditions set out in the Supplier Reverse Auction User Agreement.  The agreement expressly stated that, by
accessing Texas Procurement’s bidding system, the supplier was agreeing to the
terms and conditions of the Supplier Reverse Auction User Agreement.  The agreement explained that Gulf Coast could
choose to pay Texas Procurement, which would, in turn, pay the successful
bidder.

Four Seasons’s bid of $280,000 was
the successful bid for the crane.

After confirming that Four
Seasons’s crane met the bid specifications, Gulf Coast submitted a purchase
order to Texas Procurement for the crane. 
The purchase order indicated a total cost of $294,000.  This included Four Seasons’s  $280,000 bid price for the crane and a $14,000
commission to be paid to Texas Procurement. 
Texas Procurement in turn sent a purchase order to Four Seasons.  The purchase order indicated that the bid
price for the crane was $280,000 and that the crane should be delivered to Gulf
Coast’s Washburn Tunnel Treatment Facility. 


On December 3, 2007, Texas
Procurement sent an invoice to Gulf Coast for $294,000.  Four Seasons delivered the crane to Gulf
Coast on March 25, 2008.  On March 26,
2008, Gulf Coast paid Texas Procurement in full for the crane.  Gulf Coast also paid Texas Procurement’s
commission.  That same day, Four Seasons
invoiced Texas Procurement for $279,999.99. 
This represented the $280,000 purchase price less $.01 for a crane that
Gulf Coast traded-in to Four Seasons. 
Despite being paid in full by Gulf Coast, Texas Procurement never paid
Four Seasons for the crane.  

On May 9, 2009, Four Seasons sued Gulf
Coast for inverse condemnation, alleging a physical and a regulatory taking in
violation of article I, section 17 of the Texas Constitution.  In claiming a physical taking, Four Seasons’s original
petition alleges, “Gulf Coast physically appropriated the Crane from Four
Seasons through the reverse auction process.” 
Four Seasons also asserts that Gulf Coast “committed” a regulatory taking
when it “imposed” the use of the reverse auction process to acquire the crane.  

Gulf Coast answered and filed a plea
to jurisdiction.  In its jurisdictional
plea Gulf Coast averred,

Four Seasons has not pled a cause of action for
which Gulf Coast’s governmental immunity has been waived, and the
uncontroverted evidence establishes that Four Seasons cannot plead a cause of
action against Gulf Coast for which governmental immunity has been waived.  Thus, the court lacks jurisdiction to enter
any order other than an order of dismissal, and Gulf Coast seeks such an order
of dismissal.

 

Addressing Four Seasons’s physical
takings claim, Gulf Coast asserted, “Four Seasons argues that Gulf Coast
intended to use [Texas Procurement] to conduct a reverse auction, which is [the]
necessary intent for a taking.  However,
an intent to use [Texas Procurement] to conduct a reverse auction is not an
intent to take Four Seasons’ property without making payment therefore.”  Gulf Coast further asserted, “When money or
property is withheld in a contractual dispute, requisite intent under
constitutional-takings jurisprudence is lacking.”

With regard to Four Seasons’s
regulatory takings claim, Gulf Coast argued, “Four Seasons neglects to mention
that it was under no regulatory requirement to participate in the reverse
auction.  It knew the terms of the transaction
via the ‘Supplier Reverse Auction User Agreement’ before it ever submitted a
bid.”  

Before the trial court ruled on the
jurisdictional plea, Four Seasons supplemented its petition to include a breach
of contract claim.  Four Seasons claimed
that it had entered into a contract with Gulf Coast and that Gulf Coast had
breached the contract when it failed to pay for the crane.  Four Seasons further alleged that Texas
Procurement had acted as the agent of Gulf Coast during the transaction.  Four Seasons also asserted that Gulf Coast
had waived its immunity by its conduct.  Lastly, Four Seasons alleged that it could
recover as a third-party beneficiary of the contract between Gulf Coast and
Texas Procurement.  

Gulf Coast did not supplement its
plea to the jurisdiction to address the additional allegations found in Four
Seasons’s supplemental petition.  The
trial court denied Gulf Coast’s jurisdictional plea.  Gulf Coast then filed this interlocutory
appeal to challenge the trial court’s ruling.[1]  We now determine whether the trial court
properly denied Gulf Coast’s plea to the jurisdiction.[2]  

 

 

 

Plea to the Jurisdiction

A.      Scope and Standard of Review

          A plea to the jurisdiction based
on governmental immunity challenges the trial court’s subject matter
jurisdiction.  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225–26
(Tex. 2004).  Because subject matter
jurisdiction is a question of law, we review de novo a trial court’s ruling on
a plea to the jurisdiction.  State v. Holland, 221 S.W.3d 639, 642
(Tex. 2007). 

The plaintiff bears the burden of
alleging facts that affirmatively demonstrate that the trial court has subject matter
jurisdiction over a case.  Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  When a
plea to the jurisdiction challenges the sufficiency of plaintiff’s pleadings to
confer jurisdiction, we determine whether the pleader has alleged facts that
affirmatively demonstrate the court’s jurisdiction to hear the cause.  See Miranda, 133 S.W.3d at 226.  We construe the pleadings liberally in favor
of the plaintiff and look to the pleader’s intent.  Id.  If the pleadings affirmatively negate the
existence of jurisdiction, then a plea to the jurisdiction may be granted
without allowing the plaintiff an opportunity to amend its petition.  Id. at
227. 

In some instances, a plea to the
jurisdiction may require the court to consider evidence pertaining to
jurisdictional facts.  See id.;
Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 555 (Tex. 2000).  A plea
should not be granted if a fact issue is presented regarding the court’s
jurisdiction.  Miranda, 133 S.W.3d at 227–28.  But, if the relevant undisputed evidence
negates jurisdiction, then the plea to the jurisdiction must be granted.  Id. at
228.  We must take as true all evidence
favorable to the plaintiff and “indulge every reasonable inference and resolve
any doubts in [his] favor.”  Id.

B.      Analysis: Physical Takings Claim 

          The
Texas Constitution provides a limited waiver of a governmental unit’s immunity from
suit when property is taken, damaged, or destroyed for public use without
adequate compensation.  See Tex.
Const. art. I, § 17; see also Gen.
Servs. Comm’n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 598 (Tex.
2001).  As a result, immunity does not shield
a governmental unit from a constitutional-takings claim.  See
Holland, 221 S.W.3d at 643.  Nonetheless, when a plaintiff fails to assert
facts that constitute a taking, dismissal of the claim for want of jurisdiction
is appropriate.  See Little-Tex Insulation, 39 S.W.3d at 600 (dismissing
inverse-condemnation claim for want of jurisdiction because allegations did not
state takings claim).  

Here, Four Seasons alleges that
Gulf Coast’s acquisition of the crane, through the reverse auction process, constitutes
a physical and regulatory taking in violation of the Texas Constitution’s takings
clause.  We first address Gulf Coast’s
contention that Four Seasons has not alleged a cognizable physical takings
claim.  

A physical taking occurs when the
government authorizes an unwarranted physical occupation or appropriation of an
individual’s property.  Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 933 (Tex. 1998).  To establish a
takings claim, the claimant must allege that a governmental unit acted
intentionally to take or damage the property for a public purpose.  See
Little-Tex Insulation, 39 S.W.3d at 598. 


In its
original and supplemental petitions, Four Seasons acknowledges, “The
constitutional taking standard requires intentional conduct.”  To satisfy this requirement, Four Seasons
alleges certain acts and omissions by Gulf Coast as causing the physical taking
of the crane.  

Four
Seasons first asserts that Gulf Coast’s act of using the reverse auction
process to purchase the crane is sufficient to satisfy the requisite element of
intent because the intentional use of such process resulted in the taking of
Four Seasons’s property without compensation. 
In addition, Gulf Coast claims, 

In the case at bar, there is clear, direct, and
positive evidence that Gulf Coast committed intentional acts.  Gulf Coast never asked [Texas Procurement] if
there was another process by which Gulf Coast could pay Four Seasons directly;
never requested that [Texas Procurement] post a performance bond or any type of
bond; never consulted with any other entity, agency, city or state, or county
utilizing [Texas Procurement’s] services before making the decision to utilize [Texas
Procurement]; never did any investigation into the background of [Texas
Procurement] or whether or not they were solvent, or dependable; never received
Board approval to utilize the services of [Texas Procurement].  Before the incident made the basis of this
lawsuit, there was a piece of laboratory equipment acquired through [Texas
Procurement] services where [Texas Procurement] was slow to pay.  Gulf Coast never contacted the City of Houston
for a reference regarding [Texas Procurement]. 
These facts conclusively prove that Gulf Coast knew or should have known
that [Texas Procurement] was on the brink of insolvency, and even with this
knowledge, it still intended to use [Texas Procurement] as the reverse
auctioneer by entering into a contract with [Texas Procurement].  This intentional act by Gulf Coast resulted in
a physical taking of Four Season’s Crane.

 

In sum, Four Seasons alleges
that the intentional government actions resulting in an uncompensated physical
taking of its property are (1) Gulf Coast’s use of the reverse auction process
and (2) Gulf Coast’s retention of Texas Procurement as auctioneer without first
conducting appropriate due diligence into Texas Procurement’s financial health.  

The Supreme
Court of Texas has made clear that the level of intent required to support a
takings claim is more than mere negligence.  City of
Tyler v. Likes, 962 S.W.2d 489, 505 (Tex. 1997).  When, as here, it is alleged that the
governmental unit’s intentional act is not the actual physical taking or
damaging of property, but rather the cause
of a physical taking, a governmental unit acts intentionally if it knows either
that a specific act is causing identifiable harm or that the harm is
substantially certain to result.[3]  See City
of Dallas v. Jennings, 142 S.W.3d 310, 314–15 (Tex. 2004).  This case implicates the last inquiry: whether
the pleaded facts show that Gulf Coast knew that Texas Procurement’s failure to
pay Four Seasons for the crane was substantially certain to result (1) from the
decision to use the reverse auction process or (2) from the retention of Texas
Procurement to facilitate the reverse auction.  A governmental entity is substantially certain
that its actions will cause harm only when the harm is “necessarily an incident
to, or necessarily a consequential result of the [entity’s] action.”  Id. at 314.  The government’s knowledge
must be determined as of the time it acted, not with benefit of hindsight.  Id.

Even when
viewed in its favor, Four Seasons’s allegations do not affirmatively
demonstrate the requisite intent to support a physical takings claim.  More particularly, the allegations do not
affirmatively demonstrate that Gulf Coast knew with substantial certainty that Texas
Procurement would fail to pay Four Seasons for the crane.  Texas Procurement’s failure to pay Four
Seasons is not necessarily incident to, or a consequential result of Gulf
Coast’s lack of due diligence or its knowledge that Texas Procurement had paid
a supplier late on one occasion.  Similarly,
Texas Procurement’s failure to pay Four Seasons is not necessarily incident to,
or a consequential result of Gulf Coast’s use of the reverse auction
process.  At most, Four Seasons’s
allegations demonstrate Gulf Coast’s awareness that an increased risk existed that
Texas Procurement would not pay Four Seasons.

In
addition, undisputed jurisdictional evidence offered by Gulf Coast demonstrates
that it lacked the requisite intent to support a physical taking.  Gulf Coast offered the affidavit of James
Cooksey, its chief financial officer. 
Cooksey testified that Gulf Coast had used the reverse auction process
over the years “on various occasions.” 
According to Cooksey, Texas Procurement is the only reverse auction
facilitator that Gulf Coast has used.  Cooksey
also testified that it had acquired another crane from Four Seasons in 2002
through the reverse auction process.  Texas
Procurement had been the auction facilitator in that transaction as well.  Four Seasons never indicated to Gulf Coast
that it had not been paid in that transaction. 
Lastly, it is undisputed that Gulf Coast paid Texas Procurement $280,000
for the crane, plus a $14,000 commission. 
Such evidence further shows that Gulf Coast was not “substantially
certain” that Texas Procurement would not pay Four Seasons.  

The Texas Supreme
Court has made clear that, in takings cases, its objective has been to “avoid
what would be an anomalous result if the State, an entity otherwise generally
entitled to immunity for negligence, were subject to liability for something
less than intentional behavior.”  Tarrant Reg’l Water Dist. v. Gragg, 151
S.W.3d 546, 554 (Tex. 2004).  As a result,
the government retains immunity absent intentional conduct.  See Jennings,
142 S.W.3d at 314–15.  Anything less than
intentional conduct will not suffice.  See Karnes
City v. Kendall, 172 S.W.3d 624, 629 (Tex. App.—San Antonio
2005, pet. denied) (holding that gross negligence does not supply requisite
intent to sustain liability of governmental entity for a constitutional takings
claim; acting with “conscious indifference” to a known risk is not equivalent
to acting intentionally).

Gulf Coast’s use of
Texas Procurement’s services and Gulf Coast’s decision to use the reverse
auction process—the acts cited by Four Seasons as intentional acts—demonstrate
at most acts of negligence.[4]  Mere negligence cannot support a takings
claim against Gulf Coast.  See Likes, 962 S.W.2d at 505.  Thus, Four Seasons’s pleadings, and the record
evidence, affirmatively negate jurisdiction with regard to Four Seasons’s
physical takings claim.  We hold that the
trial court erred when it did not grant Gulf Coast’s plea to the jurisdiction
regarding the physical takings claim.[5]

C.      Analysis: Regulatory Takings Claim 

In its pleadings, Four Seasons also
asserts a regulatory takings claim.  A compensable
regulatory taking can occur when a governmental unit imposes restrictions that
either deny a property owner all economically viable use of its property or
unreasonably interfere with the owner’s right to use and enjoy the property.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998); Taub v. City of Deer Park, 882 S.W.2d 824, 826 (Tex. 1994).  

Four Seasons contends that Gulf
Coast committed a regulatory taking when it “imposed the use of a reverse auction
process to acquire the crane.”  Its own pleadings,
however, belie this assertion.  For
example, in its original petition, Four Seasons states, “Gulf Coast contacted [Four
Seasons] and requested that it take part
in an online auction scheduled for July 30, 2007 for the [] crane.”  (Emphasis added.)  In addition, the affidavit of Rod Dundas,
Four Seasons’s vice president, indicates that Four Seasons participated in the
auction at Gulf Coast’s “request.”  There
are no allegations or evidence that Four Seasons acted under any legal
compulsion when it participated in the reverse auction process.  Instead, the pleadings and the jurisdictional
evidence affirmatively demonstrate that Four Seasons voluntarily participated
in the reverse auction process.  In
short, Gulf Coast never “imposed” the reverse auction process on Four
Seasons.  

Four Seasons’s voluntary
participation in the bidding process is fatal to its takings claim.  Courts have long held that a party cannot
voluntarily participate in a government program or process and then later claim
that the process effectuated a government taking.  See,
e.g., Bowles v. Willingham, 321 U.S. 503, 517–18, 64 S. Ct. 641, 648–49
(1944); Meriden Trust & Safe Deposit
Co. v. FDIC., 62 F.3d 449, 455
(2d Cir. 1995); Burditt v. United States
Dep’t of Health & Human Servs., 934 F.2d 1362, 1376 (5th Cir. 1991); see Kahn v. Imperial Airport, L.P., No.
05-08-01022-CV, 2010 WL 923956, at *8 (Tex. App.—Dallas Mar. 16, 2010, no pet.)
(concluding that restrictive terms of agreed order did not constitute
governmental taking because it was “a joint decision” of the city and
claimants; it was not a unilateral act or regulation by the city).

Because Four Seasons voluntarily
participated in the reverse auction process, we conclude that the pleadings and
record evidence affirmatively negate Four Seasons’s regulatory takings claim
and, thus, negate jurisdiction.  We hold
that the trial court erred when it denied Gulf Coast’s plea to the jurisdiction
with regard to the regulatory takings claim.

We sustain Gulf Coast’s issues to
the extent they assert that the trial court erred when it denied Gulf Coast’s
plea to the jurisdiction. 

Damages in Excess of Jurisdictional Limit

As mentioned, Four Seasons asserted
its breach of contract claim for the first time in its supplemental petition.[6]  Gulf Coast did not amend or supplement its
plea to the jurisdiction to address the new allegations raised in the
supplemental petition.  Nonetheless, Gulf
Coast asserts on appeal that the trial court lacks subject matter jurisdiction
over Four Seasons’s breach of contract claim because the amount in controversy
exceeds the trial court’s $100,000 jurisdictional limit.[7]  We agree.

The jurisdictional limit of a
Harris County civil court at law is more than $500 but less than $100,000,
excluding interest, statutory or punitive damages, penalties, attorney’s fees,
and costs.[8]  See Tex. Gov’t Code Ann. § 25.0003(c)(1)
(Vernon Supp. 2009), § 25.1032(a) (Vernon 2004).  The amount in controversy is ordinarily
determined by looking at the allegations in the plaintiff’s original petition.  See Peek
v. Equip. Serv. Co. of San Antonio, 779 S.W.2d 802, 804 (Tex. 1989).  In its original petition, Four Seasons expressly
claims damages of $280,000.  Because this
sum exceeds the $100,000 jurisdictional limit of the trial court, we conclude
that the trial court lacks subject matter jurisdiction over Four Seasons’s
breach of contract claim.[9]  

We hold that Four Seasons’s breach
of contract claim should be dismissed. 

Conclusion

We reverse the trial court’s order
denying Gulf Coast’s plea to the jurisdiction and render judgment dismissing Four
Seasons’s claims for want of jurisdiction.

 

 

                                                                   Laura
C. Higley

                                                                   Justice


 

Panel
consists of Justices Keyes, Hanks, and Higley.

 











[1]           We have jurisdiction over this
interlocutory appeal because it is an appeal from the denial of a plea to the
jurisdiction.  See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) (permitting appeal from
interlocutory order that denies plea to jurisdiction filed by governmental unit).  In the same instrument with its plea to the
jurisdiction, Gulf Coast filed a motion for summary judgment.  The motion for summary judgment challenged
the merits of Four Seasons’s takings claims and requested the trial court to
render a take-nothing judgment against Four Seasons.  When it denied Gulf Coast’s plea to the
jurisdiction, the trial court also denied Gulf Coast’s motion for summary
judgment.  Although it invites us to do
so, we do not have jurisdiction to review the denial of the motion for summary
judgment in this interlocutory appeal.  See Novak v. Stevens, 596 S.W.2d 848,
849 (Tex. 1980).    

 





[2]           In its opening brief, Gulf Coast
identifies the following three issues for appeal: (1) the County Civil Court at
Law erred by failing to dismiss [Four Seasons’s] takings claims against [Gulf
Coast] because as a matter of law [Four Seasons] failed to plead facts showing
a viable takings claims; (2) the County Civil Court at Law erred by failing to
dismiss [Four Seasons’s] takings claims against [Gulf Coast] because as a
matter of law the jurisdictional facts establish that [Four Seasons] does not
have a viable takings claim; and (3) the County Civil Court at Law erred by
exercising subject matter jurisdiction over [Four Seasons’s] inverse
condemnation/takings claim against [Gulf Coast].  After listing the three issues, Gulf Coast
writes, “The issues are argued together as one.”  To coincide with Gulf Coast’s briefing, we
amalgamate Gulf Coast’s issues and determine unitarily whether the trial court
properly denied Gulf Coast’s plea to the jurisdiction. 





[3]           We note that this standard has been
applied in cases in which it was alleged that real property was damaged as a
result of a government action.  See, e.g., Tarrant Reg’l Water Dist. v. Gragg, 151 S.W.3d 546,
550 (Tex. 2004) (concerning release of water from reservoir causing flooding
that damaged land); City of Arlington v.
State Farm Lloyds, 145 S.W.3d 165, 166 (Tex. 2004) (involving dislodgment
of clogged sewer causing sewage backup into residence); City of Dallas v. Jennings, 142 S.W.3d 310, 312 (Tex. 2004)
(involving sewage back-up that flooded homes).  Despite the factual differences, we discern no reason why the test should not
apply to Four Seasons’s taking claim.





[4]           We further note that, to support its
takings claim, Four Seasons alleges that it contracted with Gulf Coast to sell
the crane and that Gulf Coast never paid for the crane.  Our supreme court has reasoned that when a
governmental unit withholds property in a contractual context, it lacks the
necessary intent to commit a taking because it “is acting within a color of
right under the contract and not under its eminent domain powers.”  Gen.
Servs. Comm’n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 598–99 (Tex. 2001); see State v. Holland, 221
S.W.3d 639 643–44 (Tex. 2007).  For this
reason, Four Seasons’s contract allegations also fail to demonstrate the intent
necessary for a physical takings claim. 
To the contrary, such allegations negate the requisite intent.   

 





[5]           In addition, courts have held that
when a governmental unit acquires property rights in the same manner as a
private citizen, and not pursuant to its sovereign powers, such acquisition is
not an unconstitutional taking.  See, e.g., MBP Corp. v. Bd. of Trs. of
Galveston Wharves, 297 S.W.3d 483, 490–91 (Tex. App.—Houston [14th Dist.]
2009, no pet.) (“[B]ecause a private landowner could have acted as the
[governmental unit] did, we conclude [the claimant] has not shown the [unit’s]
requisite intent to act under its sovereign powers.”); Dallas County Cmty. Coll. Dist. v. Clear Channel Outdoor, Inc., No.
05-07-00701-CV, 2008 WL 3307085, at *3–4 (Tex. App.—Dallas July 31, 2008, pet. denied)
(mem. op.) (concluding that taking did not exist as government did not compel
transfer of property in case in which party “voluntarily and willingly” sold
property to government).  The requisite intent to take property
using sovereign powers is absent in such cases.  See MBP Corp., 297 S.W.3d at
491.  Here, the record affirmatively
negates jurisdiction because it shows that Gulf Coast was acting “akin to a
private citizen” when it acquired the crane; it was not acting pursuant to its
sovereign powers.  See Holland, 221 S.W.3d at 643 (quoting Gen. Servs. Comm’n v. Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 599 (Tex. 2001)); see also MBP Corp., 297 S.W.3d at
491.  





[6]           Four Seasons also asserted that Gulf Coast had
waived its governmental immunity by its conduct and that Texas Procurement was
Gulf Coast’s agent.  These theories
appear to have been pled to advance Four Seasons’s newly pleaded breach of
contract claim.

 





[7]           We
have previously held that we may address subject matter jurisdiction in
an interlocutory appeal, even though the issue was not raised in the trial
court.  See Harris County Mun. Util. Dist. No. 156 v. United Somerset Corp.,
274 S.W.3d 133, 137–38 (Tex. App.—Houston [1st Dist.] 2008, no pet.); City of Houston v. Northwood Mun. Util.
Dist. No. 1, 73 S.W.3d 304, 313 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied); see also 138 Waco Indep. Sch.
Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000) (“[B]ecause subject matter
jurisdiction is essential to the authority of a court to decide a case, it
cannot be waived and may be raised for the first time on appeal.”).  

 





[8]           Gulf Coast does not dispute that Four
Seasons’s inverse condemnation claims were properly filed in Harris county
civil court.  The Government Code
provides, “A county civil court at law has exclusive jurisdiction in Harris
County of eminent domain proceedings, both statutory and inverse, regardless of
the amount in controversy.”  Tex. Gov’t Code Ann. § 25.1032(c)
(Vernon 2004); see Houston v. Boyle, 148 S.W.3d 171, 177–78
(Tex. App.—Houston [1st Dist.] 2004, no pet.) (“Harris County Civil Courts at
Law have exclusive jurisdiction over article 1, section 17 claims.”).

 





[9]           In its petition, Four Seasons claims,
alternatively to its $280,000 damages request, that it be given possession of
the crane “and damages for the loss of market value and/or use by Gulf
Coast.”  When a plaintiff asserts a
single claim through alternative theories of recovery, for the purpose of
determining jurisdiction, the amount in controversy is determined by looking to
the theory that would yield the largest award. 
French v. Moore, 169 S.W.3d 1,
7 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  For this reason, Four Seasons’s alternative
theory of recovery does not affect our conclusion that the trial court lacks
subject matter jurisdiction.