Affirmed and Opinion filed October 14, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00513-CV

___________________

 

W.W. Webber, L.L.C., Appellant

 

v.

 

Harris County Toll Road Authority,
Appellee



 



 

On
Appeal from the 125th District Court

Harris County,
Texas



Trial Court Cause No. 2008-04692

 



 

 

OPINION

The
trial court dismissed, for want of jurisdiction, a lawsuit filed by appellant,
W.W. Webber, L.L.C. (“Webber”), against a governmental entity, appellee Harris
County Toll Road Authority (“HCTRA”), for breach of contract and quantum
meruit.  On appeal, Webber contends HCTRA waived its governmental immunity
by conduct.  Because the Texas Supreme Court has already rejected waiver by
conduct under similar facts, we affirm.

I.

Background

This lawsuit arises from
a contract dispute relative to the construction of two sections of the Westpark
Tollway, a limited-access toll road serving portions of western Harris County
and northeastern Fort Bend County.  Construction on the tollway began in 2001.

That year, HCTRA, on
behalf of Harris County, solicited and accepted bids for the construction of
certain portions of the tollway.  Two of the bids HCTRA accepted were submitted
by Webber, a construction contractor that agreed to build two sections of the
tollway, covering a total of roughly 1.17 miles of road.  Accordingly, Webber
and HCTRA entered into two contracts, each addressing a different section of
the tollway.

At the time, HCTRA
intended to open the tollway no more than two years later, in May 2003. 
Therefore, the parties agreed to a strict deadline for completion of Webber’s
portions of the project.  Under both contracts, Webber was obligated to
complete both sections within 365 calendar days, plus six holidays.  Both
contracts specified that “time is of the essence,” and therefore authorized
Webber to work for twenty-four hours a day, and seven days per week – except
for the six designated holidays – to enable Webber to complete the project on
time.  

In addition, both
contracts imposed liquidated damages of $2,500 per day should Webber fail to
complete the project within the time allotted.  Those clauses generally
provided:

Time is of the essence of this
Contract.  If the Contractor fails to complete his undertaking acceptably to
the Authority within the time specified in his bid and Contract, the Authority
will be damaged.  The exact amount of damage is and will be difficult of exact
ascertainment.  Such damages shall be at the rate or the amount hereinafter
fixed.  The Contractor specifically binds and obligates himself to pay such
damages to the Authority on demand; or, at its option, the Authority may
withhold the amount thereof from any sums due the Contractor under this or any
other Contract, or from any other obligation of any kind owing the Contractor
by the Authority.

 

As of the date of the
contracts, Harris County had not fully secured all necessary rights of way from
the surrounding landowners, and also had not reached agreement to relocate all
utilities that might stand in the way of construction.  While those events were
expected to delay construction to some extent, Webber was strongly urged, in
light of the strict deadline, to anticipate and work around these expected
delays to complete the projects on time.  

Webber did not complete
either construction project within the deadline imposed by the contracts. 
Therefore, HCTRA invoked the liquidated-damages provisions and withheld a
portion of the original contract price.  Ultimately, HCTRA paid slightly more
than ninety-seven percent of the original contract price to Webber.

However, Webber – which
attributed its untimely performance to HCTRA’s delay in securing the rights of
way and relocation of utilities – demanded full payment of the contract amount. 
After Harris County failed or refused to accede to Webber’s demands, Webber
filed suit for breach of contract and quantum meruit.  HCTRA, as a
governmental entity, asserted immunity in a plea to the jurisdiction, and also
filed a motion for summary judgment.  The trial court sustained HCTRA’s plea
and granted summary judgment, prompting this appeal.

II.

Analysis

Webber raises seven
issues on appeal.  The first five issues are devoted to the portion of the
trial court’s order that dismissed Webber’s suit for want of jurisdiction.  We
will address each of those issues, albeit not in the same order in which they
appear in appellant’s brief.

We conclude that Webber has
failed to demonstrate the trial court’s subject-matter jurisdiction to hear
this case.  Therefore, we hold the trial court properly dismissed Webber’s
lawsuit for want of jurisdiction.  Accordingly, we need not reach appellant’s sixth
and seventh issues, in which Webber complains about the propriety of the trial
court’s order granting summary judgment to HCTRA.  See Tex. R. App. P.
47.1.

A.        Completion
of Jurisdictional Discovery

In its fourth issue, which
we address first, Webber argues that the trial court should have deferred any
ruling on HCTRA’s jurisdictional plea until after the depositions of five
Harris County employees.  In response, HCTRA contends (1) Webber waived this
complaint by failing to file a supporting affidavit or verified motion for
continuance; and (2) Webber did not diligently pursue these depositions, which
were not requested until (a) more than a year after suit was filed, (b) more
than four months after HCTRA filed its plea, and (c) more than two weeks after
the trial court’s hearing on the plea.

We review the denial of
a motion for continuance[1]
for an abuse of the trial court’s discretion.  See Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 161 (Tex. 2004); Daugherty v. Jacobs, 187
S.W.3d 607, 618 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  In this
context, a trial court abuses its discretion only if its ruling was arbitrary,
unreasonable, and lacking in reference to any guiding rules or principles.  See
Daugherty, 187 S.W.3d at 618.

A motion for continuance
is governed by Texas Rule of Civil Procedure 251 and, to the extent the request
is prompted by a perceived need to obtain testimony, Rule 252.  See Tex.
R. Civ. P. 251, 252.  Both of these rules generally require the moving party,
here, Webber, to supply either an affidavit or a verified motion reasonably
explaining the need for a continuance.[2] 
See id.; Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647
(Tex. 1996).  If the movant fails to comply with that requirement, we must
presume the trial court did not abuse its discretion by denying the requested
continuance.  See Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986); Waste
Water, Inc. v. Alpha Finishing & Developing Corp., 874 S.W.2d 940, 942
(Tex. App.—Houston [14th Dist.] 1994, no writ).

Here, Webber failed to
comply with Rules 251 and 252 because its continuance request was not verified
or supported by an affidavit explaining the need for a continuance.  See Tex.
R. Civ. P. 251, 252; Tenneco, 925 S.W.2d at 647.  Therefore, we cannot
say the trial court abused its discretion by denying Webber’s request.  See
Daugherty, 187 S.W.3d at 618.  Accordingly, we overrule appellant’s fourth
issue.

B.        Plea to
the Jurisdiction

In its first issue,
Webber contends the trial court erred by dismissing its lawsuit pursuant to
HCTRA’s claim of governmental immunity.[3] 
Specifically, Webber argues that HCTRA waived governmental immunity through its
allegedly wrongful conduct.  In response, HCTRA denies the existence of any
waiver-by-conduct exception, and further argues that its actions would not
warrant any such exception, anyway.  We will address all of these arguments,
after a brief discussion of the basics of governmental immunity.

1.         Immunity, Generally

The doctrine of
governmental immunity protects political subdivisions of the State, including
counties, from lawsuits seeking damages.  See Wichita Falls State Hosp. v.
Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003); MBP Corp. v. Bd. of Trs. of
Galveston Wharves, 297 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.]
2009, no pet.).  Stated differently, governmental entities are usually immune
from both liability and suit.  See Tooke v. City of Mexia, 197 S.W.3d
325, 332 (Tex. 2006).

The protections afforded
by governmental immunity are not absolute, however.  For example, immunity from
liability – but not immunity from suit – may be waived when a
governmental entity voluntarily enters into a contract.  See id. 
Immunity from suit, by contrast, cannot be waived except by the
Legislature.  See id.  The Legislature may consent to either a specific
lawsuit, through the issuance of a legislative resolution,[4] or a class
of lawsuits, through clear and unambiguous statutory language.  See Seureau
v. ExxonMobil Corp., 274 S.W.3d 206, 215 (Tex. App.—Houston [14th Dist.]
2008, no pet.); see also, e.g., Tex. Civ. Prac. & Rem. Code Ann. §§
101.001–.109 (Vernon 2005 & Supp. 2009) (permitting claimants to bring
certain tort claims against government).

Webber acknowledges that
this case does not fit within either of those recognized exceptions to
governmental immunity.[5] 
That is, Webber concedes that no statutory scheme authorizes its suit against
HCTRA,[6]
and it did not ask for the Legislature’s express consent to sue.[7]  See Seureau,
274 S.W.3d at 215.  Instead, Webber seeks refuge in the common-law concept of
“waiver by conduct,” a possible exception to immunity once theorized – but
never actually recognized – by the Texas Supreme Court.[8]  Before we address
that argument, we pause to consider the pertinent standards by which we review
the trial court’s order.

2.         Standard of Review

A valid claim of
governmental immunity, unless waived, deprives a trial court of subject-matter
jurisdiction over a lawsuit seeking damages against a governmental entity.  See
MBP Corp., 297 S.W.3d at 487–88.  Thus, a plaintiff bears the burden of
alleging facts that affirmatively demonstrate the trial court’s subject-matter
jurisdiction over a case.  See id. at 488 (citing Tex. Ass’n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)).  A governmental
entity may then challenge the court’s jurisdiction, as here, by filing a plea
to the jurisdiction.  See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d
547, 554 (Tex. 2000).

On appeal, we review the
trial court’s ruling on a plea to the jurisdiction de novo.[9]  See Tex. Dep’t
of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  We
consider both the plaintiff’s pleadings and the evidence submitted by the
parties,[10]
to the extent necessary to resolve the jurisdictional questions presented, in
the light most favorable to the plaintiff, here, Webber.  See MBP Corp.,
297 S.W.3d at 488; Seureau, 274 S.W.3d at 215.  If the plaintiff’s
pleadings demonstrate incurable defects in jurisdiction, or the evidence submitted
by the parties fails to raise a fact question as to jurisdiction, we must
affirm.  See MBP Corp., 297 S.W.3d at 488; Seureau, 274 S.W.3d at
215.

3.         Waiver by Conduct

Both this court and the
First Court of Appeals have discussed, at length, the history of the
waiver-by-conduct “exception.”  See Seureau, 274 S.W.3d at 220–21; Tex.
S. Univ. v. State St. Bank & Trust Co., 212 S.W.3d 893, 905–07 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied).  In brief, the oft-debated
notion that a governmental entity theoretically could waive its own immunity,
absent the Legislature’s consent, first appeared in a footnote to a majority
opinion from the Texas Supreme Court.  There, Justice Baker, writing for the
majority, suggested, “There may be . . . circumstances where the State may
waive its immunity by conduct other than simply executing a contract so that it
is not always immune from suit when it contracts.”  Fed. Sign v. Tex. S.
Univ., 951 S.W.2d 401, 408 n.1 (Tex. 1997), superseded by statute,
Tex. Gov’t Code Ann. §§ 2260.001–.108 (Vernon 2008), as recognized in Gen.
Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 595–97 (Tex.
2001).

However, in 2001, the
Texas Supreme Court retreated from that language, refusing to recognize any
waiver-by-conduct exception in an action against the State:

[R]egardless of what we might have held . . . in 1997, the
situation has changed.  After Federal Sign, the Legislature enacted a
dispute-resolution procedure to resolve certain breach-of-contract cases
against the State.  Historically, we have left to the Legislature whether to
waive sovereign immunity. . . .

. . . .

[W]e conclude that there is but one route to the courthouse
for breach-of-contract claims against the State, and that route is through the
Legislature. . . .  Apart from a special statute conferring consent, a party
simply cannot sue the State for breach of contract absent legislative consent .
. . .

 

Little-Tex
Insulation Co., 39 S.W.3d at 595, 597.

Over the years, the
Supreme Court has repeatedly refused to recognize a waiver-by-conduct
exception, much less define the sort of conduct that might warrant its
application.  See Tex. A&M Univ. Sys. v. Koseoglu, 233 S.W.3d 835,
840 (Tex. 2007); Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d
704, 705–06 (Tex. 2003); see also Tex. Natural Res. Conservation Comm’n v.
IT-Davy, 74 S.W.3d 849, 857 (Tex. 2002) (plurality op.) (“Creating a
waiver-by-conduct exception would force the State to expend its resources to
litigate the waiver-by-conduct issue before enjoying sovereign immunity’s
protections – and this would defeat many of the doctrine’s underlying
policies.”).  

In the absence of such
guidance from the Supreme Court, this court has likewise declined to craft some
judicial exception to immunity.  See MBP Corp., 297 S.W.3d at 493–94; Tara
Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564, 579–80 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied); Seureau, 274 S.W.3d at 220–21,
225; Breezy v. Anatomical Bd., No. 14-03-01321-CV, 2005 WL 1923854, at
*1 n.2 (Tex. App.—Houston [14th Dist.] Aug. 11, 2005, no pet.) (mem. op.); Robinson
v. Univ. of Tex. Med. Branch at Galveston, 171 S.W.3d 365, 371 (Tex.
App.—Houston [14th Dist.] 2005, no pet.); see also Univ. of Tex. Med. Branch
at Galveston v. Harrison, No. 14-02-01276-CV, 2003 WL 21803314, at *2 n.2
(Tex. App.—Houston [14th Dist.] Aug. 7, 2003, pet. denied) (mem. op.) (“As an
intermediate appellate court, we defer to the Texas Supreme Court to decide
when, if ever, and under what circumstances such a [waiver-by-conduct]
contention might become sustainable.”).

In 2007, the First Court
of Appeals concluded that a governmental entity, Texas Southern University
(“TSU”), had waived immunity through its conduct in a case featuring
“extraordinary factual circumstances.”  See State St., 212 S.W.3d at
900, 908.  In State Street, unlike here, TSU – in response to a direct
inquiry about the enforceability of the contract[11] – intentionally
relinquished its right to immunity by assuring its contract partner, in
writing, that (1) their contract could be enforced in court, and (2) TSU would
actually be liable to pay any money judgment arising from its breach of that
contract.  See id. at 898.  Under those facts, the appellate court found
“waiver by conduct.”  See id. at 907–08; but see Seureau, 274
S.W.3d at 225 (explaining State Street, under traditional waiver
principles, as an “intentional relinquishment of a known right or intentional
conduct inconsistent with claiming that right”) (citing Jernigan v. Langley,
111 S.W.3d 153, 156 (Tex. 2003)).  However, the Texas Supreme Court denied
TSU’s petition for review, thereby declining to confirm or deny the existence
or scope of the waiver-by-conduct exception.

4.         Application to Facts

However, even if a
waiver-by-conduct exception does exist, the Texas Supreme Court has foreclosed
its application under these facts.  That is, the Court has ruled that a
governmental entity does not waive its immunity from suit simply by adjusting a
contract price pursuant to a liquidated-damages clause, even if the propriety
of that adjustment is disputed.  See Travis County v. Pelzel & Assocs.,
Inc., 77 S.W.3d 246, 252 (Tex. 2002), superseded on other grounds by
statute, Tex. Loc. Gov’t Code Ann. § 262.007 (Vernon 2005), as noted in
Tooke v. City of Mexia, 197 S.W.3d 325, 342 (Tex. 2006).

In Pelzel, Travis
County withheld full payment on a construction contract, pursuant to a
liquidated-damages clause, because the builder – Pelzel – failed to complete
the project by the agreed-upon deadline.  See id. at 247.  In response, Pelzel
sued the county, arguing that (1) it was entitled to full payment because the
parties had agreed to extend the project-completion deadline, and (2) the
county waived its immunity from suit by accepting Pelzel’s performance without
making full payment.  See id. at 247, 251.  

The Texas Supreme Court
disagreed with Pelzel and upheld Travis County’s claim of immunity, holding:

According to the contract’s liquidated-damages clause,
Travis County could retain $250 for each calendar day Pelzel failed to
substantially complete the building beyond the date set for completion and
acceptance.  The fact is undisputed that Travis County withheld, under the
liquidated-damages clause, only $5,500.00 of the total contract price of
$414,164.80.  When a governmental unit adjusts a contract price according to
the contract’s express terms, it does not, by its conduct, waive immunity from
suit, even if the propriety of that adjustment is disputed.  See
IT-Davy, 74 S.W.3d at 252.  Thus we conclude that Travis County did not
waive immunity from suit by invoking the contract’s liquidated-damages clause.

 

Id.
at 252 (emphasis added).

The facts in Pelzel
are virtually on all fours with those presented here.[12]  Webber
voluntarily signed two contracts containing “time is of the essence” language
and liquidated-damages clauses that authorized HCTRA, in the event Webber
failed to meet the one-year deadline, to withhold $2,500 per day until
construction was complete.  There is no dispute that, in fact, Webber missed
the agreed-upon deadline, triggering the liquidated-damages clauses and leading
HCTRA to adjust the contract prices accordingly.  Relying on Pelzel, we
hold that HCTRA did not waive its immunity from suit by invoking the contracts’
liquidated-damages clauses, notwithstanding Webber’s protests about the
fairness of those adjustments.  See id.

Thus, Webber has not
demonstrated the trial court’s subject-matter jurisdiction to consider its suit
against HCTRA.  Therefore, we overrule appellant’s first issue.  Having done
so, we affirm the trial court’s dismissal of Webber’s suit for lack of
subject-matter jurisdiction.

III.

Conclusion

We overrule appellant’s
first through fifth issues and affirm the portion of the trial court’s judgment
granting HCTRA’s plea to the jurisdiction.  Having done so, we need not address
the propriety of its summary-judgment order.  See Tex. R. App. P. 47.1.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Justices
Brown, Sullivan, and Christopher.

 









[1] The record does not
indicate that Webber expressly presented its continuance request – which was
contained within a pleading actually opposing HCTRA’s motion for
continuance of the trial setting – to the trial court.  See Tex. R. App.
P. 33.1(a).  However, we will assume, without deciding, that the trial court,
by granting HCTRA’s plea, implicitly denied Webber’s request for a deferral of
that ruling.  See Tex. R. App. P. 33.1(a)(2)(A); In re A.D.A.,
287 S.W.3d 382, 387 (Tex. App.—Texarkana 2009, no pet.).





[2] Rule 251 also
contemplates a continuance “by consent of the parties,” see Tex. R. Civ.
P. 251, but the parties do not contend that provision applies here.





[3] In this opinion, we will
use the term “governmental immunity,” which extends to political subdivisions
of the State, as opposed to “sovereign immunity,” which refers to the State’s
immunity from suit.  See Seureau v. ExxonMobil Corp., 274 S.W.3d 206,
214 n.5 (Tex. App.—Houston [14th Dist.] 2008, no pet.).





[4] See Tex. Civ.
Prac. & Rem. Code Ann. §§ 107.001–.005 (Vernon 2005 & Supp. 2009).





[5] In addition, Webber does
not challenge HCTRA’s status as a governmental entity ordinarily entitled to
immunity.  See, e.g., Sw. Bell Tel., L.P. v. Harris County Toll Road Auth.,
282 S.W.3d 59, 60, 70 (Tex. 2009) (holding HCTRA was entitled to governmental
immunity).





[6] In 2003, the Legislature
amended the Local Government Code to authorize suits against a county arising
from construction contracts, among others.  See Act of May 29, 2003,
78th Leg., R.S., ch. 1203, § 2, 2003 Tex. Gen. Laws 3418, 3418–19 (current
version at Tex. Loc. Gov’t Code Ann. § 262.007 (Vernon 2005)).  However, the
Legislature expressly confined the scope of that limited waiver to contracts
executed after September 1, 2003.  See id. at § 4(b), 2003 Tex. Gen.
Laws at 3419.  Therefore, that amendment does not apply to Webber’s contracts
with HCTRA, which were executed in 2001.  See id.





[7] Webber also raises a
constitutional-takings claim in its brief, but it did not present that argument
to the trial court in response to HCTRA’s plea.  Therefore, we may not consider
that claim for the first time on appeal.  See Tex. R. App. P. 33.1(a); Seals
v. City of Dallas, 249 S.W.3d 750, 759 (Tex. App.—Dallas 2008, no pet.).





[8] See discussion infra
Part II.B.3.





[9] In its second and third
issues, Webber recites the relevant standard of review and alleges, in a
conclusory fashion, that the trial court failed to follow it.  However, under
the de novo standard of review, we will affirm if the trial court
reached the correct result and reverse if it did not, and its reasoning is not
relevant to our de novo analysis.  See Markel Ins. Co. v. Muzyka,
293 S.W.3d 380, 385 (Tex. App.—Fort Worth 2009, no pet.); Johnson v. City of
Fort Worth, No. 2-08-369-CV, 2009 WL 806868, at *1 n.4 (Tex. App.—Fort
Worth Mar. 26, 2009, no pet.) (mem. op.).  Because we ultimately hold the trial
court did not err by dismissing Webber’s suit for want of jurisdiction, we
overrule appellant’s second and third issues – which do not provide a separate
basis for reversal of the trial court’s judgment – as moot.  See Markel,
293 S.W.3d at 385; Johnson, 2009 WL 806868, at *1 n.4.





[10] In its fifth issue,
Webber complains that some of the documents attached to HCTRA’s plea contain
inadmissible evidence and should not have been considered by the trial court. 
Webber does not identify the specific evidence it finds objectionable.  See Tex.
R. App. P. 38.1(i).  In any event, we overrule this complaint, for two
reasons.  First, Webber did not obtain a ruling on its objection to these
unidentified documents and does not contend that the trial court refused to
rule on its objection.  See Tex. R. App. P. 33.1(a)(2).  Second, Webber
attached the same exhibits to its own response to the plea to the
jurisdiction and has therefore waived any complaint to the trial court’s
consideration of that evidence.  See McInnes v. Yamaha Motor Corp., U.S.A.,
673 S.W.2d 185, 188 (Tex. 1984) (“A party on appeal should not be heard to
complain of the admission of improper evidence offered by the other side, when
he, himself, introduced the same evidence or evidence of a similar
character.”).  Accordingly, we overrule appellant’s fifth issue.





[11] See Br. for
Appellees CMS Viron Corp. & CMS Energy Res. Mgmt. Co., Tex. S. Univ. v.
State St. Bank & Trust Co., 212 S.W.3d 893 (Tex. App.—Houston [1st
Dist.] 2007, pet. denied) (Nos. 01-05-00758-CV & 01-06-00497-CV), available
at 2005 WL 3675896, at *3–*4 (“Viron insisted that TSU specifically
represent and warrant that . . . its ‘obligation under this Master Lease
constitutes an enforceable obligation.’ . . . Additionally, Viron demanded an
‘opinion of counsel’ that TSU’s promises were valid.”).





[12] Webber attempts to
distinguish Pelzel by claiming that, in this case, there is no real
dispute as to Webber’s entitlement to most of the funds withheld by Harris
County.  In support, Webber notes that the lead engineer has placed his
initials next to a figure identified as the “[a]mount due for payment.”  Webber
interprets those initials as some sort of acknowledgement by the county
that these figures are owing but remain unpaid.  

However, that argument lacks merit because these sums
have not been approved by the county auditor or commissioner’s court.  See Tex.
Loc. Gov’t Code Ann. §§ 113.043 (Vernon 2008) (“[T]he county treasurer and the
county depository may not pay a check or warrant unless it is countersigned by
the county auditor to validate it as a proper and budgeted item of
expenditure.”), 113.064(a) (Vernon 2008) (“A claim, bill, or account may not be
allowed or paid until it has been examined and approved by the auditor.”). 
That responsibility may not be delegated to any other officer or county
employee.  See Crider v. Cox, 960 S.W.2d 703, 706 (Tex. App.—Tyler 1997,
writ denied).  Instead, the approval of both the auditor and commissioner’s
court is a condition precedent to the payment of claims.  See id. 

In this case, the invoices contained in the appellate
record have not been approved by either the auditor or commissioner’s court. 
Accordingly, we cannot accept the premise of Webber’s argument that Harris
County has actually agreed to pay these invoices.