**GULF COAST WASTE DISPOSAL AUTHORITY, Appellant,**

v.

**FOUR SEASONS EQUIPMENT, INC., Appellee.**

No. 01–09–01001–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 24, 2010.

**170**

John J. Hightower, Patricia L. Hayden, Scott Bounds, Olson & Olson, L.L.P., Houston, TX, for Appellant.

K. Scott Brazil, Brazil & Dunn, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HANKS, and HIGLEY.

## OPINION

LAURA C. HIGLEY, Justice.

In this interlocutory appeal, Gulf Coast Waste Disposal Authority ("Gulf Coast"), a political subdivision of the State, appeals the trial court's denial of its plea to the jurisdiction, asserting that it has immunity from suit. The underlying dispute arises from a commercial transaction in which Gulf Coast acquired a crane from Four Seasons Equipment, Inc. ("Four Seasons") through an Internet auction. We determine whether, as alleged by Four Seasons, Gulf Coast's governmental immunity was waived because the acquisition of the crane constituted an uncompensated "taking" of Four Seasons's property as prohibited by article I, section 17 of the Texas Constitution.

We conclude that the acquisition of the crane was not an unconstitutional taking; thus, Gulf Coast's sovereign immunity has not been waived. The trial court erred when it denied Gulf Coast's jurisdictional plea. We further conclude that the trial

court lacks subject matter jurisdiction over Four Seasons's breach of contract claim because Four Seasons's requested damages exceed the maximum jurisdictional limit of the trial court.

We reverse and render judgment dismissing Four Seasons's claims against Gulf Coast for lack of jurisdiction.

## Background

Created by the Texas Legislature, Gulf Coast is a political subdivision of the State of Texas. It is a conservation and reclamation district, which manages the water resources of Chambers, Galveston, and Harris counties by providing waste disposal systems and regulation of waste disposal.

In 2007, Gulf Coast sought to purchase a crane for its Washburn Tunnel Treatment Facility. Gulf Coast contacted Four Seasons and requested budgetary pricing on a 30–ton capacity hydraulic rough terrain crane. Gulf Coast requested and received Four Seasons's assistance in formulating the bid specifications for the desired crane.

Gulf Coast informed Four Seasons that the purchase of the crane would occur through the "reverse auction process." A reverse auction is a real-time bidding process usually lasting less than one hour and taking place at a previously scheduled time and Internet location. Suppliers anonymously submit bids to provide the designated goods or services. During the auction, the bids go down rather than up. Bidders are able to view the current bid and may make multiple, increasingly lower bids until the set time expires. The goal is to be the lowest bidder at the end of the auction.

Texas Procurement Center ("Texas Procurement"), an auction facilitator, had the required software to conduct an on-line reverse auction. Gulf Coast did not have the software to conduct a reverse auction and had previously used the services of Texas Procurement when purchasing equipment through the reverse auction process.

To purchase the crane in 2007, Gulf Coast again used Texas Procurement's services to conduct the reverse auction. Texas Procurement conducted the reverse auction on July 30, 2007. Four Seasons participated in the on-line bidding process for the crane.

Before it was permitted to participate in the on-line bidding, Four Seasons was required to agree to the terms and conditions set out in the Supplier Reverse Auction User Agreement. The agreement expressly stated that, by accessing Texas Procurement's bidding system, the supplier was agreeing to the terms and conditions of the Supplier Reverse Auction User Agreement. The agreement explained that Gulf Coast could choose to pay Texas Procurement, which would, in turn, pay the successful bidder.

Four Seasons's bid of $280,000 was the successful bid for the crane.

After confirming that Four Seasons's crane met the bid specifications, Gulf Coast submitted a purchase order to Texas Procurement for the crane. The purchase order indicated a total cost of $294,000. This included Four Seasons's $280,000 bid price for the crane and a $14,000 commission to be paid to Texas Procurement. Texas Procurement in turn sent a purchase order to Four Seasons. The purchase order indicated that the bid price for the crane was $280,000 and that the crane should be delivered to Gulf Coast's Washburn Tunnel Treatment Facility.

On December 3, 2007, Texas Procurement sent an invoice to Gulf Coast for $294,000. Four Seasons delivered the crane to Gulf Coast on March 25, 2008.

On March 26, 2008, Gulf Coast paid Texas Procurement in full for the crane. Gulf Coast also paid Texas Procurement's commission. That same day, Four Seasons invoiced Texas Procurement for $279,999.99. This represented the $280,000 purchase price less $.01 for a crane that Gulf Coast traded-in to Four Seasons. Despite being paid in full by Gulf Coast, Texas Procurement never paid Four Seasons for the crane.

On May 9, 2009, Four Seasons sued Gulf Coast for inverse condemnation, alleging a physical and a regulatory taking in violation of article I, section 17 of the Texas Constitution. In claiming a physical taking, Four Seasons's original petition alleges, "Gulf Coast physically appropriated the Crane from Four Seasons through the reverse auction process." Four Seasons also asserts that Gulf Coast "committed" a regulatory taking when it "imposed" the use of the reverse auction process to acquire the crane.

Gulf Coast answered and filed a plea to jurisdiction. In its jurisdictional plea Gulf Coast averred,

> Four Seasons has not pled a cause of action for which Gulf Coast's governmental immunity has been waived, and the uncontroverted evidence establishes that Four Seasons cannot plead a cause of action against Gulf Coast for which governmental immunity has been waived. Thus, the court lacks jurisdiction to enter any order other than an order of dismissal, and Gulf Coast seeks such an order of dismissal.

Addressing Four Seasons's physical takings claim, Gulf Coast asserted, "Four Seasons argues that Gulf Coast intended to use [Texas Procurement] to conduct a reverse auction, which is [the] necessary intent for a taking. However, an intent to use [Texas Procurement] to conduct a reverse auction is not an intent to take Four Seasons' property without making payment therefore." Gulf Coast further asserted, "When money or property is withheld in a contractual dispute, requisite intent under constitutional-takings jurisprudence is lacking."

With regard to Four Seasons's regulatory takings claim, Gulf Coast argued, "Four Seasons neglects to mention that it was under no regulatory requirement to participate in the reverse auction. It knew the terms of the transaction via the 'Supplier Reverse Auction User Agreement' before it ever submitted a bid."

Before the trial court ruled on the jurisdictional plea, Four Seasons supplemented its petition to include a breach of contract claim. Four Seasons claimed that it had entered into a contract with Gulf Coast and that Gulf Coast had breached the contract when it failed to pay for the crane. Four Seasons further alleged that Texas Procurement had acted as the agent of Gulf Coast during the transaction. Four Seasons also asserted that Gulf Coast had waived its immunity by its conduct. Lastly, Four Seasons alleged that it could recover as a third-party beneficiary of the contract between Gulf Coast and Texas Procurement.

Gulf Coast did not supplement its plea to the jurisdiction to address the additional allegations found in Four Seasons's supplemental petition. The trial court denied Gulf Coast's jurisdictional plea. Gulf Coast then filed this interlocutory appeal to challenge the trial court's ruling.[1] We

---

1. We have jurisdiction over this interlocutory appeal because it is an appeal from the denial of a plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM CODE ANN § 51.014(a)(8) (Vernon 2008) (permitting appeal from interlocutory order that denies plea to jurisdiction filed by governmental unit). In the same instrument with its plea to the jurisdiction, Gulf Coast

now determine whether the trial court properly denied Gulf Coast's plea to the jurisdiction.[2]

## Plea to the Jurisdiction

### A. Scope and Standard of Review

■■■ A plea to the jurisdiction based on governmental immunity challenges the trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004). Because subject matter jurisdiction is a question of law, we review de novo a trial court's ruling on a plea to the jurisdiction. *State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007).

■■■ The plaintiff bears the burden of alleging facts that affirmatively demonstrate that the trial court has subject matter jurisdiction over a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). When a plea to the jurisdiction challenges the sufficiency of plaintiff's pleadings to confer jurisdiction, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda,* 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its petition. *Id.* at 227.

■■■ In some instances, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts. *See id.; Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000). A plea should not be granted if a fact issue is presented regarding the court's jurisdiction. *Miranda,* 133 S.W.3d at 227–28. But, if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. *Id.* at 228. We must take as true all evidence favorable to the plaintiff and "indulge every reasonable inference and resolve any doubts in [his] favor." *Id.*

### B. Analysis: Physical Takings Claim

■■■ The Texas Constitution provides a limited waiver of a governmental unit's immunity from suit when property is taken, damaged, or destroyed for public use without adequate compensation. *See* Tex. Const. art. I, § 17; *see also Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591, 598 (Tex.2001). As a result, immunity does not shield a

filed a motion for summary judgment. The motion for summary judgment challenged the merits of Four Seasons's takings claims and requested the trial court to render a take-nothing judgment against Four Seasons. When it denied Gulf Coast's plea to the jurisdiction, the trial court also denied Gulf Coast's motion for summary judgment. Although it invites us to do so, we do not have jurisdiction to review the denial of the motion for summary judgment in this interlocutory appeal. *See Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980).

2. In its opening brief, Gulf Coast identifies the following three issues for appeal: (1) the County Civil Court at Law erred by failing to dismiss [Four Seasons's] takings claims against [Gulf Coast] because as a matter of law [Four Seasons] failed to plead facts showing a viable takings claims; (2) the County Civil Court at Law erred by failing to dismiss [Four Seasons's] takings claims against [Gulf Coast] because as a matter of law the jurisdictional facts establish that [Four Seasons] does not have a viable takings claim; and (3) the County Civil Court at Law erred by exercising subject matter jurisdiction over [Four Seasons's] inverse condemnation/takings claim against [Gulf Coast]. After listing the three issues, Gulf Coast writes, "The issues are argued together as one." To coincide with Gulf Coast's briefing, we amalgamate Gulf Coast's issues and determine unitarily whether the trial court properly denied Gulf Coast's plea to the jurisdiction.

governmental unit from a constitutional-takings claim. *See Holland,* 221 S.W.3d at 643. Nonetheless, when a plaintiff fails to assert facts that constitute a taking, dismissal of the claim for want of jurisdiction is appropriate. *See Little–Tex Insulation,* 39 S.W.3d at 600 (dismissing inverse-condemnation claim for want of jurisdiction because allegations did not state takings claim).

Here, Four Seasons alleges that Gulf Coast's acquisition of the crane, through the reverse auction process, constitutes a physical and regulatory taking in violation of the Texas Constitution's takings clause. We first address Gulf Coast's contention that Four Seasons has not alleged a cognizable physical takings claim.

A physical taking occurs when the government authorizes an unwarranted physical occupation or appropriation of an individual's property. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex.1998). To establish a takings claim, the claimant must allege that a governmental unit acted intentionally to take or damage the property for a public purpose. *See Little–Tex Insulation,* 39 S.W.3d at 598.

In its original and supplemental petitions, Four Seasons acknowledges, "The constitutional taking standard requires intentional conduct." To satisfy this requirement, Four Seasons alleges certain acts and omissions by Gulf Coast as causing the physical taking of the crane.

Four Seasons first asserts that Gulf Coast's act of using the reverse auction process to purchase the crane is sufficient to satisfy the requisite element of intent because the intentional use of such process resulted in the taking of Four Seasons's property without compensation. In addition, Gulf Coast claims,

In the case at bar, there is clear, direct, and positive evidence that Gulf Coast committed intentional acts. Gulf Coast never asked [Texas Procurement] if there was another process by which Gulf Coast could pay Four Seasons directly; never requested that [Texas Procurement] post a performance bond or any type of bond; never consulted with any other entity, agency, city or state, or county utilizing [Texas Procurement's] services before making the decision to utilize [Texas Procurement]; never did any investigation into the background of [Texas Procurement] or whether or not they were solvent, or dependable; never received Board approval to utilize the services of [Texas Procurement]. Before the incident made the basis of this lawsuit, there was a piece of laboratory equipment acquired through [Texas Procurement] services where [Texas Procurement] was slow to pay. Gulf Coast never contacted the City of Houston for a reference regarding [Texas Procurement]. These facts conclusively prove that Gulf Coast knew or should have known that [Texas Procurement] was on the brink of insolvency, and even with this knowledge, it still intended to use [Texas Procurement] as the reverse auctioneer by entering into a contract with [Texas Procurement]. This intentional act by Gulf Coast resulted in a physical taking of Four Season's Crane.

In sum, Four Seasons alleges that the intentional government actions resulting in an uncompensated physical taking of its property are (1) Gulf Coast's use of the reverse auction process and (2) Gulf Coast's retention of Texas Procurement as auctioneer without first conducting appropriate due diligence into Texas Procurement's financial health.

The Supreme Court of Texas has made clear that the level of intent required

to support a takings claim is more than mere negligence. *City of Tyler v. Likes,* 962 S.W.2d 489, 505 (Tex.1997). When, as here, it is alleged that the governmental unit's intentional act is not the actual physical taking or damaging of property, but rather the *cause* of a physical taking, a governmental unit acts intentionally if it knows either that a specific act is causing identifiable harm or that the harm is substantially certain to result.[3] *See City of Dallas v. Jennings,* 142 S.W.3d 310, 314–15 (Tex.2004). This case implicates the last inquiry: whether the pleaded facts show that Gulf Coast knew that Texas Procurement's failure to pay Four Seasons for the crane was substantially certain to result (1) from the decision to use the reverse auction process or (2) from the retention of Texas Procurement to facilitate the reverse auction. A governmental entity is substantially certain that its actions will cause harm only when the harm is "necessarily an incident to, or necessarily a consequential result of the [entity's] action." *Id.* at 314. The government's knowledge must be determined as of the time it acted, not with benefit of hindsight. *Id.*

Even when viewed in its favor, Four Seasons's allegations do not affirmatively demonstrate the requisite intent to support a physical takings claim. More particularly, the allegations do not affirmatively demonstrate that Gulf Coast knew with substantial certainty that Texas Procurement would fail to pay Four Seasons for the crane. Texas Procurement's failure to pay Four Seasons is not necessarily incident to, or a consequential result of Gulf Coast's lack of due diligence or its knowledge that Texas Procurement had paid a supplier late on one occasion. Similarly, Texas Procurement's failure to pay Four Seasons is not necessarily incident to, or a consequential result of Gulf Coast's use of the reverse auction process. At most, Four Seasons's allegations demonstrate Gulf Coast's awareness that an increased risk existed that Texas Procurement would not pay Four Seasons.

In addition, undisputed jurisdictional evidence offered by Gulf Coast demonstrates that it lacked the requisite intent to support a physical taking. Gulf Coast offered the affidavit of James Cooksey, its chief financial officer. Cooksey testified that Gulf Coast had used the reverse auction process over the years "on various occasions." According to Cooksey, Texas Procurement is the only reverse auction facilitator that Gulf Coast has used. Cooksey also testified that it had acquired another crane from Four Seasons in 2002 through the reverse auction process. Texas Procurement had been the auction facilitator in that transaction as well. Four Seasons never indicated to Gulf Coast that it had not been paid in that transaction. Lastly, it is undisputed that Gulf Coast paid Texas Procurement $280,000 for the crane, plus a $14,000 commission. Such evidence further shows that Gulf Coast was not "substantially certain" that Texas Procurement would not pay Four Seasons.

The Texas Supreme Court has made clear that, in takings cases, its objective has been to "avoid what would be an ano-

---

**3.** We note that this standard has been applied in cases in which it was alleged that real property was damaged as a result of a government action. *See, e.g., Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 550 (Tex. 2004) (concerning release of water from reservoir causing flooding that damaged land); *City of Arlington v. State Farm Lloyds,* 145 S.W.3d 165, 166 (Tex.2004) (involving dislodgment of clogged sewer causing sewage backup into residence); *City of Dallas v. Jennings,* 142 S.W.3d 310, 312 (Tex.2004) (involving sewage back-up that flooded homes). Despite the factual differences, we discern no reason why the test should not apply to Four Seasons's taking claim.

malous result if the State, an entity otherwise generally entitled to immunity for negligence, were subject to liability for something less than intentional behavior." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex.2004). As a result, the government retains immunity absent intentional conduct. *See Jennings*, 142 S.W.3d at 314–15. Anything less than intentional conduct will not suffice. *See Karnes City v. Kendall*, 172 S.W.3d 624, 629 (Tex.App.-San Antonio 2005, pet. denied) (holding that gross negligence does not supply requisite intent to sustain liability of governmental entity for a constitutional takings claim; acting with conscious indifference to a known risk is not equivalent to acting intentionally).

■■■ Gulf Coasts use of Texas Procurements services and Gulf Coasts decision to use the reverse auction process—the acts cited by Four Seasons as intentional acts—demonstrate at most acts of negligence.[4] Mere negligence cannot support a takings claim against Gulf Coast. *See*

*Likes*, 962 S.W.2d at 505. Thus, Four Seasons pleadings, and the record evidence, affirmatively negate jurisdiction with regard to Four Seasons physical takings claim. We hold that the trial court erred when it did not grant Gulf Coasts plea to the jurisdiction regarding the physical takings claim.[5]

## C. Analysis: Regulatory Takings Claim

■■■ In its pleadings, Four Seasons also asserts a regulatory takings claim. A compensable regulatory taking can occur when a governmental unit imposes restrictions that either deny a property owner all economically viable use of its property or unreasonably interfere with the owner's right to use and enjoy the property. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex.1998); *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex.1994).

Four Seasons contends that Gulf Coast committed a regulatory taking when it "imposed the use of a reverse auction pro-

---

4. We further note that, to support its takings claim, Four Seasons alleges that it contracted with Gulf Coast to sell the crane and that Gulf Coast never paid for the crane. Our supreme court has reasoned that when a governmental unit withholds property in a contractual context, it lacks the necessary intent to commit a taking because it "is acting within a color of right under the contract and not under its eminent domain powers." *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598–99 (Tex.2001); *see State v. Holland*, 221 S.W.3d 639, 643–44 (Tex.2007). For this reason, Four Seasons's contract allegations also fail to demonstrate the intent necessary for a physical takings claim. To the contrary, such allegations negate the requisite intent.

5. In addition, courts have held that when a governmental unit acquires property rights in the same manner as a private citizen, and not pursuant to its sovereign powers, such acquisition is not an unconstitutional taking. *See, e.g., MBP Corp. v. Bd. of Trs. of Galveston*

*Wharves*, 297 S.W.3d 483, 490–91 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("[B]ecause a private landowner could have acted as the [governmental unit] did, we conclude [the claimant] has not shown the [unit's] requisite intent to act under its sovereign powers."); *Dallas County Cmty. Coll. Dist. v. Clear Channel Outdoor, Inc.*, No. 05–07–00701–CV, 2008 WL 3307085, at *3–4 (Tex.App.-Dallas July 31, 2008, pet. denied) (mem.op.) (concluding that taking did not exist as government did not compel transfer of property in case in which party "voluntarily and willingly" sold property to government). The requisite intent to take property using sovereign powers is absent in such cases. *See MBP Corp.*, 297 S.W.3d at 491. Here, the record affirmatively negates jurisdiction because it shows that Gulf Coast was acting "akin to a private citizen" when it acquired the crane; it was not acting pursuant to its sovereign powers. *See Holland*, 221 S.W.3d at 643 (quoting *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 599 (Tex.2001)); *see also MBP Corp.*, 297 S.W.3d at 491.

cess to acquire the crane." Its own pleadings, however, belie this assertion. For example, in its original petition, Four Seasons states, "Gulf Coast contacted [Four Seasons] and *requested* that it take part in an online auction scheduled for July 30, 2007 for the [ ] crane." (Emphasis added.) In addition, the affidavit of Rod Dundas, Four Seasons's vice president, indicates that Four Seasons participated in the auction at Gulf Coast's "request." There are no allegations or evidence that Four Seasons acted under any legal compulsion when it participated in the reverse auction process. Instead, the pleadings and the jurisdictional evidence affirmatively demonstrate that Four Seasons voluntarily participated in the reverse auction process. In short, Gulf Coast never "imposed" the reverse auction process on Four Seasons.

▆▆▆ Four Seasons's voluntary participation in the bidding process is fatal to its takings claim. Courts have long held that a party cannot voluntarily participate in a government program or process and then later claim that the process effectuated a government taking. *See, e.g., Bowles v. Willingham*, 321 U.S. 503, 517–18, 64 S.Ct. 641, 648–49, 88 L.Ed. 892 (1944); *Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 455 (2d Cir.1995); *Burditt v. United States Dep't of Health & Human Servs.*, 934 F.2d 1362, 1376 (5th Cir.1991); *see Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 442–43 (Tex.App.-Dallas 2010, no pet.) (concluding that restrictive terms

of agreed order did not constitute governmental taking because it was "a joint decision" of the city and claimants; it was not a unilateral act or regulation by the city).

Because Four Seasons voluntarily participated in the reverse auction process, we conclude that the pleadings and record evidence affirmatively negate Four Seasons's regulatory takings claim and, thus, negate jurisdiction. We hold that the trial court erred when it denied Gulf Coast's plea to the jurisdiction with regard to the regulatory takings claim.

We sustain Gulf Coast's issues to the extent they assert that the trial court erred when it denied Gulf Coast's plea to the jurisdiction.

### Damages in Excess of Jurisdictional Limit

▆▆▆ As mentioned, Four Seasons asserted its breach of contract claim for the first time in its supplemental petition.[6] Gulf Coast did not amend or supplement its plea to the jurisdiction to address the new allegations raised in the supplemental petition. Nonetheless, Gulf Coast asserts on appeal that the trial court lacks subject matter jurisdiction over Four Seasons's breach of contract claim because the amount in controversy exceeds the trial court's $100,000 jurisdictional limit.[7] We agree.

▆▆▆ The jurisdictional limit of a Harris County civil court at law is more

---

6. Four Seasons also asserted that Gulf Coast had waived its governmental immunity by its conduct and that Texas Procurement was Gulf Coast's agent. These theories appear to have been pled to advance Four Seasons's newly pleaded breach of contract claim.

7. We have previously held that we may address subject matter jurisdiction in an interlocutory appeal, even though the issue was not raised in the trial court. *See Harris County Mun. Util. Dist. No. 156 v. United Somerset*

*Corp.*, 274 S.W.3d 133, 137–38 (Tex.App.-Houston [1st Dist.] 2008, no pet.); *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 313 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) ("[B]ecause subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal.").

than $500 but less than $100,000, excluding interest, statutory or punitive damages, penalties, attorney's fees, and costs.[8] *See* TEX. GOV'T CODE ANN. § 25.0003(c)(1) (Vernon Supp.2009), § 25.1032(a) (Vernon 2004). The amount in controversy is ordinarily determined by looking at the allegations in the plaintiff's original petition. *See Peek v. Equip. Serv. Co. of San Antonio,* 779 S.W.2d 802, 804 (Tex.1989). In its original petition, Four Seasons expressly claims damages of $280,000. Because this sum exceeds the $100,000 jurisdictional limit of the trial court, we conclude that the trial court lacks subject matter jurisdiction over Four Seasons's breach of contract claim.[9]

We hold that Four Seasons's breach of contract claim should be dismissed.

### Conclusion

We reverse the trial court's order denying Gulf Coast's plea to the jurisdiction and render judgment dismissing Four Seasons's claims for want of jurisdiction.

---

8. Gulf Coast does not dispute that Four Seasons's inverse condemnation claims were properly filed in Harris county civil court. The Government Code provides, "A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy." TEX. GOV'T CODE ANN. § 25.1032(c) (Vernon 2004); *see Houston v. Boyle,* 148 S.W.3d 171, 177–78 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("Harris County Civil Courts at Law have exclusive jurisdiction over article 1, section 17 claims.").

9. In its petition, Four Seasons claims, alternatively to its $280,000 damages request, that it be given possession of the crane "and damages for the loss of market value and/or use by Gulf Coast." When a plaintiff asserts a single claim through alternative theories of recovery, for the purpose of determining jurisdiction, the amount in controversy is determined by looking to the theory that would yield the largest award. *French v. Moore,* 169 S.W.3d 1, 7 (Tex.App.-Houston [1st Dist.] 2004, no pet.). For this reason, Four Seasons's alternative theory of recovery does not affect our conclusion that the trial court lacks subject matter jurisdiction.