Opinion issued July 25, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00417-CV

———————————

**CITY OF KEMAH, Appellant**

**V.**

**VERONICA CROW, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CV-2460**

---

## MEMORANDUM OPINION

Appellant City of Kemah (the City) appeals the trial court's order denying its amended plea to the jurisdiction filed under Texas Rule of Civil Procedure 91a seeking to dismiss appellee Veronica Crow's takings claim under the Texas Constitution. In one issue, the City contends that the trial court erred in denying its

amended plea because Crow has not alleged a ripe claim and she failed to plead facts alleging a compensable taking. We affirm.

## Background

In 2022, Crow sued the City asserting an inverse condemnation, or takings, claim. Her amended petition alleged as follows:

In 2021, Crow purchased the lot at 1306 Fay Road in Kemah, Texas, where she and her husband, Mark, intended to build a home in a style known as a "barndominium,"[1] as well as two additional cottages to be used as short-term rentals (STRs). The Crows expected to supplement their future income with rental revenues from the cottages so that they could enjoy semi-retirement from their auto collision business.

Crow contacted the City's permit department to initiate the process of obtaining residential building permits and establish communications with Brandon Shoaf, the City's Chief Building Official, and Walter Gant, the City Administrator. In May 2021, Crow submitted the documents that the City required and her construction plans to build her home and the STRs.

In July 2021, in response to Crow's inquiring about the status of her permit, Shoaf told her that she was required to have a meeting with him, Gant, and the City

---

[1] According to Crow's amended petition, the barndominium style is characterized by, among other things, open spaces and customizable floor plans.

2

Mayor, Carl Joiner. At the meeting, which Mayor Joiner did not attend, Shoaf told Crow that Mayor Joiner was opposed to STRs although he knew that he had no legal authority to prohibit the Crows from building STRs on their property.[2]

Crow alleged that, on July 30, 2021, Shoaf emailed her to inform her that her building plans had been approved, and he attached a report from Bureau Veritas approving Crow's building plans.[3] On August 5, 2021, in response to Crow's inquiry, Shoaf confirmed via text message that his July 30 email with the attached Bureau Veritas report was Crow's official building permit. Crow attached a copy of Shoaf's text as an exhibit to her amended petition. In August 2021, Crow submitted minor revisions to some of the building plans. On August 19, Shoaf emailed Crow that the City had approved the changes. A copy of Shoaf's email was attached to Crow's amended petition.

As construction began on the barndominium, Shoaf frequently relayed to Crow complaints that his office was receiving regarding her building plans. On each occasion, Shoaf reassured Crow that she was in compliance with all City requirements.

---

[2] In her amended petition, Crow alleged that the City, through its officers and officials, falsely represented on several occasions that the Crows had changed the scope of their plans to abandon the STRs.

[3] Crow attached the email, but not the attached Bureau Veritas report, as an exhibit to her amended petition.

3

In mid-October 2021, Shoaf informed Crow that City regulations required the barndominium to have its lowest finished floor elevated to a minimum of eighteen inches above the crest of the facing street. Crow alleged that while this regulation applies to structures built outside the designated special flood hazard area, 1306 Fay Road is inside the designated special flood hazard area and therefore not subject to the eighteen-inch elevation requirement. Although Crow repeatedly asked for confirmation that the eighteen-inch elevation requirement applied to her property, she was never provided with anything justifying imposition of the regulation on her property. However, due to Shoaf's repeated demands that she comply with the elevation requirements, Crow brought in substantial amounts of dirt, at substantial cost, to raise the lot at 1306 Fay Road to comply with the regulation.

Crow alleged that once the ground intended to be the foundation of the Crow's home was elevated as the City had required, it became obvious that the elevation created a potential hazard for runoff flooding of the neighboring lots. Neighbors began to complain to the City about the potential impact of the elevation on the local drainage patterns.

In November 2021, Crow met with Gant and Mayor Joiner. Mayor Joiner advised her that she could pacify all the complaints if she agreed to build something other than a barndominium. Crow alleged that at a City Council meeting on February 16, 2022, Mayor Joiner confirmed his efforts to change Crow's mind about her

4

building plans, stating that, as mayor, he had a duty to heed the complaints from neighbors who did not want a barndominium built at 1306 Fay Road.[4] Crow alleged that Mayor Joiner also falsely told her that she could only have one structure on her property. Crow alleged that Mayor Joiner had no legal authority to intervene because there is no homeowners' association, deed restriction, or zoning ordinance applicable to 1306 Fay Road which would prohibit construction of the barndominium or STR cottages. Once the elevation work was complete, Crow had approximately $50,000 worth of building materials delivered to 1306 Fay Road.

On November 30, 2021, Shoaf sent an email to Crow which included another complaint sent to City Council about the barndominium and asking the City to stop construction. Crow alleged that the email included a map purporting to show the property outside the designated special flood hazard area. Crow alleged, however, that the map actually showed 1308 Fay Road instead of 1306 Fay Road, and thus did not concern her property. Crow became concerned given the misinformation but Shoaf assured her that although City Council was meeting the next day, the citizen's complaint was not on the meeting agenda and she should not worry. Crow alleged that Shoaf failed to tell her that citizen comments are not posted on the agenda in advance of a meeting.

---

[4] According to Crow, Mayor Joiner has been a vocal opponent of STRs as well as some Kemah residents who object to the nuisances cause by renters of STRs.

5

Crow alleged that, contrary to Shoaf's representation, the minutes of the December 1 City Council meeting reflect that a citizen did, in fact, complain that the work being done at 1306 Fay Road did not appear to meet code. Crow alleged that when City Council asked Shoaf for an update on the 1306 Fay Road property, Shoaf read aloud another email complaint to the Council and that, based on this second complaint, City Council issued a stop work order (SWO) for the 1306 Fay Road property, without contacting Crow.

Shoaf emailed the SWO to Crow on December 2, 2021. Crow alleged that Shoaf again confirmed that Crow had a permit and that he intended to get the SWO lifted by December 6, 2021.[5] Crow alleged that Shoaf failed to get the SWO lifted and informed her that she would have to submit a drainage plan prepared by a registered professional engineer despite the fact that a drainage plan is not required for residential construction submittals. Throughout January 2022, Shoaf told Crow that the drainage plan was required before the SWO could be lifted, and that LJA Engineering would review the Crows' drainage plan. Crow alleged that, in the meantime, $50,000 worth of construction materials were rotting at 1306 Fay Road

---

[5] Crow attached to her petition a December 10, 2021 email update from Shoaf to Mayor Joiner and City Council providing an update on the SWO for 1306 Fay Road. In the email, Shoaf urged councilmembers to "keep lines of communication open with the City Administrator prior to contacting any permit holder, in an effort not to allow the opportunity for misinformation to be rendered."

which the Crows had left at the property in early December 2021 based on Shoaf's repeated reassurances that the SWO would be lifted.

Crow alleged that while she attempted to get the SWO lifted, Shoaf suggested that she seek a variance from City Council to lower her lot from the eighteen-inch elevation that Shoaf had previously represented was required by the City. Crow submitted a variance request to be heard at the January 19, 2022 City Council meeting. Although Crow was not permitted to speak at the meeting, citizens commented on her variance request at the meeting, urging that it should be denied. Crow alleged that she was unable to respond to the misinformation in the citizens' comments because Shoaf told her she was not permitted to attend and speak at the meeting.

Crow alleged that Shoaf and Gant told her that they would give any written questions or comments she had to City Council and that, based on these representations, she gave them a brief list of her reasons for the variance request and an image of the FEMA map showing that 1306 Fay Road is within the designated special flood hazard area and thus not required to meet the eighteen-inch elevation requirement. Crow alleged that, despite their promise, neither document appeared in the City Council agenda materials and no reference was made to them at the meeting. Instead, the City Council materials for her variance request included a map that wrongly showed 1306 Fay Road as being outside the special flood hazard area,

7

indicating that her variance request had been altered. Crow alleged that she was unable to correct the misinformation because Shoaf told her she could not address City Council. Crow's variance request was ultimately denied.

With the help of City Councilmember Doug Meisinger, Crow put new items on the agenda for the February 16, 2022 City Council meeting, including requests to lift the SWO, grant the elevation variance, and provide her with a hard copy of her permit. Crow alleged that she, Mark, and Councilmember Meisinger described at the City Council meeting the numerous difficulties and obstacles she and Mark faced during the permitting process. Crow attached a transcript of the February 16, 2022 City Council meeting to her amended petition. At the meeting, Mayor Joiner stated: "[Item] 24. Discussion, consideration, and possible action on a request to lift the stop work order on 1306 Fay Road, Kemah, Texas 77565, Owner Veronica Crow, request for the city to provide a hard copy of the permit for 1306 Fay Road, Kemah, Texas 77565, issued under No. 210603007 . . . ." City Council granted Crow's request to lift the SWO the following day. Crow alleged, however, that City Council could not resolve her variance request without clarification as to what elevation was, in fact, required.

On April 27, 2022, LJA Engineering sent a formal letter to Crow instructing her to remove the excess dirt that the City had required her to obtain to meet the eighteen-inch elevation requirement. In explaining the change of instruction, LJA

8

Engineering stated that 1306 Fay Road was located in the regulated floodplain Zone AE13 and, therefore, the eighteen-inch elevation requirement caused the Crows to exceed the maximum elevation permitted for their lot. Crow alleged that despite this acknowledgement, the City did not rescind its demand for a drainage plan.

Crow alleged that after Shoaf resigned from his position with the City, he was replaced by Alfonso Acosta. In August 2022, Acosta told Crow that she would have to submit all the documents required for a permit application again. Crow alleged that when it became clear that the City did not intend to allow her to build her barndominium and cottages as previously planned and approved by the City, she served a demand letter on the City on October 18, 2022.

Crow's amended petition alleged that the City, through the actions of Shoaf, Gant, and Mayor Joiner, regulated and/or restricted Crow's use of her property at 1306 Fay Road and that the City's conduct constituted a taking under Article I, Section 17 of the Texas Constitution. Crow sought out-of-pocket damages and damages for loss of investment-backed expectations.

The City filed an amended plea to the jurisdiction under Texas Rule of Civil Procedure 91a, seeking dismissal of Crow's takings claim based on the City's sovereign and governmental immunity. It argued that Crow's amended petition failed to (1) assert a ripe constitutional taking and (2) provide a basis for the waiver of the City's immunity. The City argued that Crow never obtained a final decision

from the City on her permit application. Specifically, it asserted that although Crow claimed to have received an email from Shoaf advising her of the City's approval of her permit application, she failed to allege facts showing the actual issuance of such a permit or the City's denial of her application. It further argued that Crow did not allege that she obtained a variance, or that her alleged variance request was denied, and she failed to allege facts showing that re-application for a building permit would be futile. Thus, it argued, Crow failed to present a ripe claim over which the trial court could assert subject matter jurisdiction. The City also argued that Crow failed to plead cognizable damages. The City attached to its amended plea several sections of the City of Kemah's Code of Ordinances.

Crow responded arguing that the City's plea was predicated on the allegation that the City did not deny, refuse, or issue a building permit to Crow, which was directly contrary to the facts she alleged in her amended petition. Crow asserted that she properly alleged that the City issued her a building permit and then engaged in offensive conduct preventing her from developing her property and realizing her economic investment, which rose to the level of a constituting taking. She asserted that, under Rule 91a, the court must take her allegations as true, and that her allegations sufficiently alleged a ripe takings claim. Crow further argued that although she was not required to plead facts that re-applying for a permit would be futile—because the City had issued a permit to her and thus there was no need to

10

reapply for a permit in the first place—her pleadings nonetheless established futility. Crow asserted that the City's complaint related to her damages was not jurisdictional and therefore did not support the City's amened plea.

The trial court denied the City's amended plea on May 22, 2023. This interlocutory appeal followed.

## Discussion

The City contends that the trial court erred in denying its amended plea to the jurisdiction on immunity grounds because Crow failed to (1) demonstrate a ripe claim and (2) allege the elements of a valid takings claim. Crow responds that she sufficiently pleaded facts, which this Court must take as true, that establish all elements of a ripe takings claim.

### A.    Standard of Review

Texas Rule of Civil Procedure 91a allows a party to move for early dismissal of a cause of action against it. *See* TEX. R. CIV. P. 91a; *Ball v. City of Pearland*, No. 01-20-00039-CV, 2021 WL 4202179, at *2 (Tex. App.—Houston [1st Dist.] Sept. 16, 2021, no pet.) (mem. op.). A trial court may dismiss a cause of action under Rule 91a if "it has no basis in law or fact." TEX. R. CIV. P. 91a.1; *Ball*, 2021 WL 4202179, at *2. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1; *see also Ball*, 2021 WL 4202179, at *2. A cause of

11

action that has no basis in law arises "in at least two situations: (1) the petition alleges too few facts to demonstrate a viable, legally cognizable right to relief or (2) the petition alleges additional facts that, if true, bar recovery." *State v. Cal-Maine Foods, Inc.*, No. 01-20-00641-CV, 2022 WL 3363199, at \*3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, pet. denied). A cause of action has no basis in fact if "no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1.

In ruling on a Rule 91a motion, the trial court "may not consider evidence" and "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits" permitted by the Texas Rules of Civil Procedure. TEX. R. CIV. P. 91a.6; *see also Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact. *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Because Rule 91a provides a harsh remedy, we strictly construe the rule's requirements. *Renate Nixdorf GmbH & Co. KG v. TRA Midland Props., LLC*, No. 05-17-00577-CV, 2019 WL 92038, at \*10 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.); *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 607 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). We review a trial court's decision on a Rule 91a motion to dismiss de novo. *Bethel*, 595 S.W.3d

12

at 654; *Malik v. GEICO Advantage Ins. Co.*, No. 01-19-00489-CV, 2021 WL 1414275, at *4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, pet. denied) (mem. op.).

## B. Applicable Law

Sovereign immunity and its counterpart for political subdivisions, governmental immunity, protect the State and its political subdivisions, including counties, cities, and municipalities, from lawsuits and liability for money damages. *See Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (2004). "Absent a valid statutory or constitutional waiver, trial courts lack subject-matter jurisdiction to adjudicate lawsuits against municipalities." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 631 (Tex. 2015).

Inverse condemnation claims, also referred to as "takings" claims, are rooted in the takings clause of the Texas Constitution, which provides a limited waiver of a governmental unit's immunity from suit when property is taken, damaged, or destroyed for public use without adequate compensation. *See* TEX. CONST. art. I, § 17(a) ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ."); *see also Gen. Servs.*

*Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Gulf Coast Waste Disposal Auth. v. Four Seasons Equip., Inc.*, 321 S.W.3d 168, 173 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Relevant here, a compensable regulatory taking occurs when a governmental agency imposes "restrictions that either (1) deny landowners of all economically viable use of their property, or (2) unreasonably interfere with the landowners' rights to use and enjoy their property." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935 (Tex. 1998).[6]

To plead a valid takings claim and establish waiver of immunity under the takings clause, a plaintiff must allege that the governmental entity (1) intentionally performed certain acts in the exercise of its lawful authority, (2) that resulted in taking, damaging, or destroying the plaintiff's property, (3) for public use. *Gen. Servs. Comm'n*, 39 S.W.3d at 598; *Flores v. City of Galveston*, No. 01-20-00042-CV, 2022 WL 120018, at *9 (Tex. App.—Houston [1st Dist.] Jan. 13, 2022, no pet.) (mem. op.). A governmental entity does not have immunity from a valid takings claim. *Gen. Servs. Comm'n*, 39 S.W.3d at 598. The question of whether particular facts give rise to a "taking" of property is a question of law that

---

[6] Takings of property are generally classified as physical or regulatory. *See Yee v. City of Escondido*, 503 U.S. 519, 522–23 (1992); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). A physical taking occurs when the government authorizes an unwarranted physical occupation of property. *See Yee*, 503 U.S. at 522; *Mayhew*, 964 S.W.2d at 933; *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669–70 (Tex. 2004). Crow's amended petition does not allege a physical taking of her property.

we review de novo. *See City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 241 (Tex. 2002); *Mayhew*, 964 S.W.2d at 937.

**C.    Ripeness**

The City first contends that Crow has failed to demonstrate a ripe claim because she never obtained a final decision from City Council, which it asserts is a condition precedent to conferring jurisdiction on the trial court in a case regarding judicial review of a permit denial. Crow responds that she has properly alleged a ripe regulatory takings claim sufficient to defeat Kemah's assertion of sovereign immunity.

For a court to have subject matter jurisdiction, the claim at issue must be ripe. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682–83 (Tex. 2020). Ripeness focuses on a lawsuit's timing. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) ("While standing focuses on the issue of *who* may bring an action, ripeness focuses on *when* that action may be brought."). In determining whether a case is ripe, the focus is on whether "the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Gibson*, 22 S.W.3d at 851–52 (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). If the plaintiff's claimed injury is based on "hypothetical facts, or upon events that have not yet come to pass," then the case is not ripe, and the court lacks subject matter jurisdiction. *Id.* (citation

omitted). We review a trial court's ripeness determination de novo. *Mayhew*, 964 S.W.2d at 928 ("[R]ipeness is a legal question subject to de novo review . . . .") (citations omitted).

The City argues that Crow's takings claim is not ripe because Crow has never obtained a decision from City Council. It argues that a final determination from the governing body, which is a condition precedent to conferring jurisdiction on the trial court, usually requires both a rejected development plan and the denial of a variance from the controlling regulations. The City argues that Crow's own pleading admission that "Crow filed an elevation variance request to be heard at the January 19, 2022, council meeting" makes clear that she never obtained a final decision from the Council. In support of its argument, the City argues that "[u]nder Kemah, Tex. Code of Ordinances, Ch. 1, § 1-14(a)(1), formal city council approval for a permit is required if, as Crow admits in admitting she needed to seek a variance, there is 'any alleged violation of any city ordinance or state statute (pertaining to the condition of the property) on the property for which the applicant is seeking to obtain a permit or certificate.'"

Crow responds that Kemah's ripeness argument is premised on its mischaracterization of the allegations in her amended petition. She asserts that the City's argument is based on its denial that it issued a building permit to Crow and that therefore there was no final determination and no denial of a permit application

upon which to base a takings claim. Crow argues that she did not plead that she was denied a permit but, rather, that she was issued a permit and the City subsequently engaged in a series of acts to prevent her from developing her property and realizing her economic investment.

In her amended petition, Crow alleged:

- On July 30, 2021, Mr. Shoaf informed Crow that her building plans had been approved, via an email that attached a report from Bureau Veritas approving Crow's building plans;

- On August 5, 2021, via text message, Shoaf re-affirmed that his July 30 email with the Bureau Veritas report was Crow's official building permit.

- Crow submitted minor revisions to some of the plans in early August. Approval of the revisions was again provided to Crow by Mr. Shoaf on August 19, 2021.

In support of her allegation that the City issued her a building permit, Crow attached copies of the emails and texts above as exhibits to her amended petition. Crow also attached a transcript of the minutes from the February 16, 2022 City Council meeting. At the meeting, Mayor Joiner stated, "[Item] 24. Discussion, consideration, and possible action on a request to lift the stop work order on 1306 Fay Road, Kemah, Texas 77565, Owner Veronica Crow, request for the city to provide a hard copy of the permit for 1306 Fay Road, Kemah, Texas 77565, issued under No. 210603007 . . . ." Also attached to Crow's amended petition is a December 10, 2021 email from Shoaf to the Mayor and City Council providing an update on 1306 Fay Road. In the email, Shoaf stated, "It has also been brought to the attention

17

of Walter [Gant] and myself that a member of Council has reached out to the *permit holder*." (emphasis added)

Crow alleged that she was issued a permit to build on 1306 Fay Road in July 2021, constituting the final determination of her permit application, the City then denied Crow her right to proceed with construction under that permit, and later denied that the permit ever existed. Crow alleged that she sustained the loss of investment-backed expectations as a result of the City's improper, intentional, and wrongful conduct, which amounts to a taking under the Texas Constitution. Taking her factual allegations as true, as we must, we conclude that Crow's claim is ripe. *See Perez v. Turner*, 653 S.W.3d 191, 197 (Tex. 2022) ("Ripeness asks primarily whether the plaintiff has alleged a past injury or a likely future injury, rather than a speculative, remote injury that may not come to pass."); *Midtown Edge, L.P. v. City of Hous.*, No. 01-12-00730-CV, 2014 WL 586232, at *4 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no pet.) (mem. op.) (concluding condominium developer's claims against city which included inverse condemnation claim based on city's refusal to reimburse developer after other properties connected to wastewater line constructed by developer alleged concrete injury and was therefore ripe for review).

**B.     Crow's Takings Claim**

The City argues that even if Crow presented a ripe claim, her amended petition does not sufficiently state a takings claim under the Texas Constitution because her

petition does not demonstrate a restriction on her use of the property sufficiently severe to constitute a taking. The City further asserts that its requirement of a professionally engineered drainage plan is at least "roughly proportional" to the City's legitimate interest in flood prevention. In response, Crow argues that she pleaded that the City engaged in a months-long course of interference which constitutes a compensable regulatory takings claim. She asserts that the City's argument that she must overcome the presumption that the City properly exercised its police power with respect to flood prevention by requiring a drainage plan is misplaced because she is not challenging a specific regulation in connection with the City's denial of a permit.

To plead a valid inverse condemnation claim and establish waiver of immunity under the takings clause, a plaintiff must allege that the governmental entity (1) intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in taking, damaging, or destroying the plaintiff's property (3) for public use. *Gen. Servs. Comm'n*, 39 S.W.3d at 598*; Flores*, 2022 WL 120018, at \*9. A compensable regulatory taking occurs when a governmental agency imposes restrictions that either (1) deny landowners of all economically viable use of their property or (2) unreasonably interfere with the landowners' rights to use and enjoy their property. *Mayhew*, 964 S.W.2d at 935; *Cal-Maine Foods*, 2022 WL 3363199,

at \*7; *City of Hous. v. Commons at Lake Hous., Ltd*., 587 S.W.3d 494, 499 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Here, Crow pleaded that the City engaged in intentional conduct by, among other things, refusing to provide her with the physical permit, requiring Crow to meet the eighteen-inch elevation requirement, requiring an unnecessary drainage plan, and issuing a stop work order without legal basis. She alleged that the City's actions substantially and unreasonably interfered with her right to use and enjoy her property because she purchased the property with the intention of living there and using the cottages to generate rental revenue to supplement her and Mark's future income and allow them to enjoy semi-retirement and, thus, the City's actions deprived her of her investment-backed expectations. *See generally City of Grapevine v. Muns*, 651 S.W.3d 317, 339 (Tex. App.—Fort Worth 2021, pet. denied) (noting that under *Penn Central*[7] test, regulatory taking can occur when government action unreasonably interferes with landowner's use and enjoyment of property; guiding considerations include economic impact of regulation on claimant, extent to which regulation has interfered with distinct investment-backed expectations, and character of governmental action). Crow alleged that the City took these actions for the benefit of the public by prohibiting Crow from building a home in an unpopular style and

---

[7] *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978).

two cottages intended to be used as short-term rentals, an industry that Crow alleged the Mayor and some Kemah residents disliked.

Citing *Mira Mar Development Corp. v. City of Coppell*, 364 S.W.3d 366, 379 (Tex. App.—Dallas, 2012, pet denied),[8] the City asserts that Crow has failed to allege how the City's requirement of a drainage plan is not "roughly proportional" to the City's legitimate interest in flood prevention.[9] The City's argument is misplaced. Crow is not challenging the City's requirement of a drainage plan as a condition to the granting of a permit as the basis for her regulatory takings claim. Rather, as discussed above, Crow pleaded that the City issued a permit and then took

---

[8] The court of appeals's opinion issued in *Mira Mar Development Corp. v. City of Coppell*, 364 S.W.3d 366 (Tex. App.—Dallas, 2012, pet denied) was withdrawn and superseded by *Mira Mar Development Corp. v. City of Coppell*, 421 S.W.3d 74 (Tex. App.—Dallas 2013, no pet.).

[9] A regulatory taking may occur when a government conditions the granting of a permit or some other type of government approval on an exaction from a landowner seeking that approval. *See Dolan v. City of Tigard*, 512 U.S. 374, 384–85 (1994); *Town of Flower Mound v. Stafford Ests. Ltd. P'ship*, 135 S.W.3d 620, 634 (Tex. 2004). An exaction occurs if a governmental entity requires an action by a landowner as a condition to obtaining government approval of a requested land development. *Town of Flower Mound v. Stafford Ests. Ltd. P'ship*, 71 S.W.3d 18, 30 (Tex. App.—Fort Worth 2002), *aff'd, Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620 (Tex. 2004); *Mira Mar Dev. Corp.*, 421 S.W.3d at 82. The Texas Supreme Court has adopted a "rough proportionality" test to determine whether an exaction constitutes a compensable taking: [C]onditioning government approval of a development of property on some exaction is a compensable taking unless the condition (1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is roughly proportional to the projected impact of the proposed development. *Mira Mar Dev. Corp.*, 421 S.W.3d at 83 (quoting *Stafford Ests.*, 135 S.W.3d at 634).

21

a series of actions to prevent her from developing her property which substantially and unreasonably interfered with her right to use and enjoy her property and realize her investment-backed expectations. Thus, Crow was not required to plead that the City's requirement of a drainage plan was not "roughly proportional" to the City's legitimate interest in flood prevention.

At this stage of the litigation, we need not fully decide the merits of the underlying claim. *See Cal-Maine Foods*, 2022 WL 3363199, at *5. Relying only on the pleadings and construing the pleadings liberally in favor of Crow, as we must, we cannot say that Crow's allegations have no basis in law or that no reasonable person could believe the facts as pleaded. *See* TEX. R. CIV. P. 91a.1. The trial court did not err in denying the City's amended plea to the jurisdiction on immunity grounds. *See Gen. Servs. Comm'n*, 39 S.W.3d at 598 (stating governmental entity does not have immunity from valid takings claim). We overrule the City's issue.[10]

## Conclusion

We affirm the trial court's order denying the City's amended plea to the jurisdiction.

Amparo Monique Guerra
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

---

[10]    In light of our disposition, all pending motions are dismissed as moot.

22